JACKSON & Another v. LAWRENCE & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Submitted April 1, 1886.—Decided April 12, 1886.

L made and delivered to W his promissory note for $1300 payable in ninety days, and a deed of a tract of land absolute on its face. It was orally agreed between them that the deed was executed as security for the payment of the note, and that, if the note was not paid at maturity, W was authorized to sell the land. The note not being paid at maturity W, with the knowledge and assent of L, sold and conveyed the land to T and applied the proceeds to the payment of the debt. After the completion of the contract and execution of the deed, but before its delivery to T, a creditor of L who had recovered judgment against him, levied on this tract of land to satisfy the judgment, and caused it to be sold. The purchaser at the sheriff's sale after receiving his deed, filed a bill in equity against the heirs and devisees of T, praying to be admitted to redeem the land on payment of the note. *Held :* (1) That the transaction was in equity a mortgage : (2) That parol evidence was admissible to show when the power of sale in the mortgage became absolute : (3) That W had an absolute power of sale when the conveyance was made to T, the execution of which carried the land free from the mortgage.

Bill in equity to redeem from a mortgage. The case is stated in the opinion of the court.

*Mr. Aaron S. Everest, Mr. T. J. Johnston,* and *Mr. H. M. Jackson* for appellants.

*Mr. B. F. Lucas* for appellees.

MR. JUSTICE WOODS delivered the opinion of the court.

The appellants filed the bill in the Circuit Court. The following facts are shown by the record. One Alvin N. Lancaster being the owner in fee simple of certain lands in Worth, Nodaway and Atchison Counties, in the State of Missouri, conveyed them on September 15, 1875, to Edward L. Wells by deed absolute on its face. At the time the deed was executed Lancaster made and delivered to Wells his promissory note for $1300, payable in ninety days. There was at the time a verbal understanding between them that the deed was made as security for the payment of the note, and that if the note was not paid at maturity Wells should have the right to sell the land to whom he pleased. The note was not paid at maturity. Wells pressed Lancaster for payment, and on his failure to pay, about January 5, 1876, contracted to sell the lands to George C. Tallman, and executed to him a quit-claim deed of that date therefor, which, however, was not delivered until January 20, 1876.

On January 15, 1876, the plaintiffs in this suit began, by attachment, in the Circuit Court of Worth County, Missouri, an action against Lancaster, in which the lands in controversy were seized, and on October 24, 1876, they recovered judgment against him for $895. On February 21, 1878, executions were issued on the judgment to the sheriffs of the counties where the lands lay, and the lands were sold by virtue thereof, and purchased by the plaintiffs, to whom deeds therefor were made. George C. Tallman, the vendee of Wells, died on May 5, 1880, and the defendants in the present suit were his devisees of the lands above mentioned. Afterwards, on January 31, 1882, the plaintiffs filed a bill in this case, in which they alleged that the deed of Lancaster to Wells was in effect a mortgage executed to secure the note made by the former to the latter. They tendered to the defendants the amount due on the note, with

all the taxes paid by the latter on the lands, and prayed for a decree permitting them, as purchasers of Lancaster's equity of redemption, to redeem the lands, and for general relief.

The defendants answered, that at the time George C. Tallman purchased the lands, and at the time of the delivery of said deed, which they averred to be on January 5, 1876, he had no notice of any claim of the plaintiffs against Lancaster, or that the title of Wells to the lands in controversy was other or different from the absolute title which the deed from Lancaster to him purported to convey, and that Tallman intended to purchase, and did purchase, the absolute title thereto, for which he paid a full and valuable consideration.

On final hearing the Circuit Court dismissed the bill, and the plaintiffs appealed.

There is no conflict in the testimony, or disagreement between the parties touching the terms on which Lancaster conveyed the lands in controversy to Wells. Lancaster, Wells, and one Jordan, who acted as agent for Wells in the transaction, all give the same account. The deed was executed to secure the payment of the note made by Lancaster to Wells for $1300, due in ninety days, with the distinct agreement that if the note was not paid when due, Wells should be authorized to sell the land. No other account is given of this transaction by any witnesses.

The deed from Lancaster to Wells was, therefore, in effect a mortgage, for it is settled that an absolute deed intended by the parties as a security for a debt is in equity a mortgage. *Hughes* v. *Edwards,* 9 Wheat. 489 ; *Sprigg* v. *Bank of Mount Pleasant,* 14 Pet. 201 ; *Morris* v. *Nixon,* 1 How. 118 ; *Peugh* v. *Davis,* 96 U. S. 332 ; *Teal* v. *Walker,* 111 U. S. 242 ; *Brant* v. *Robertson,* 16 Missouri, 129 ; *Worley* v. *Dryden,* 57 Missouri, 226 ; *O'Neill* v. *Capelle,* 62 Missouri, 202. Is is also settled that evidence written or oral may be admitted to show the real character of the transaction. *Russell* v. *Southard,* 12 How. 139 ; *Babcock* v. *Wyman,* 19 How. 289 ; *Peugh* v. *Davis,* *ubi supra* ; *Brick* v. *Brick,* 98 U. S. 514.

There being no dispute, therefore, in relation to the terms of the agreement between Lancaster and Wells, on which the

deed of the former to the latter was executed and delivered, it is to be read in equity precisely as if the agreement were set out therein, and is to be considered a mortgage to secure the payment of the note made by Lancaster to Wells according to its tenor, with power to Wells in default of payment to sell the mortgaged premises.

This condition must be taken as a whole; no part of it can be rejected. The authority to Wells to sell the premises, in default of payment of the note, was just as much an element in the condition as the right of Lancaster to a reconveyance upon payment of the note. The right of Wells to sell the premises in default of payment was a right of property which he had bought and paid for, which could not be impaired by an attachment levied on the property by Lancaster's creditors. Their attachment was as much subject to the right of Wells to sell in default of payment of the note, as it would have been to his right to foreclose a mortgage made in the usual form. After the attachment was levied Wells exercised the right to sell. He sold, as the record abundantly shows, with the knowledge and concurrence of Lancaster. The property brought enough to pay the debt, and no more. It is not disputed that the sale was fair and *bona fide*. It, therefore, cut up by the roots all title of Lancaster, and all claim of the plaintiffs acquired by their attachment upon the lands in question, and left neither in them nor Lancaster any right to redeem. The vendee of Wells stands upon the same ground as if he had bought the premises at a foreclosure sale, and his title is indefeasible.

This conclusion does not depend upon the fact whether or not Tallman purchased with or without notice of the verbal condition under which the deed from Lancaster to Wells was executed. The rights of Lancaster and those claiming under him are not strengthened by the fact that the condition was a verbal one. They are in no better position than if the condition had been incorporated in the deed and put upon the public records, thereby giving constructive notice to all the world. In the latter case it is clear that Wells, having power to sell, could sell to whomsoever he chose. Therefore, whether

the vendee had notice of the condition would be immaterial. But the proof in the record that Tallman had no knowledge or notice of the condition, and that when he bought he supposed the deed was what it purported to be, an absolute conveyance, is clear and positive.

The case, therefore, in all its elements, falls within the rule laid down by the Supreme Court of Missouri in *Wilson* v. *Drumrite*, 21 Missouri, 325. In that case a deed absolute on its face was executed by Wilson to Drumrite, but was in fact given as a security for a debt. There was a verbal agreement between Wilson and Drumrite that the latter should reconvey if the debt was paid when due; in case of default Drumrite was authorized to sell the land to enforce payment of his debt. Wilson failed to pay the debt when due, and Drumrite sold part of the land to a purchaser without notice. The court, laying stress upon the fact that the vendee had no notice of the condition, held that the sale was valid, but that Drumrite must account to Wilson for the land sold, and must reconvey the residue.

In the present case, even under the rule laid down by the Supreme Court of Missouri, there is no right of redemption.

Upon the whole record, therefore, the decree of the Circuit Court dismissing the bill was right.

*Decree affirmed.*