ACME FOOD CO. et al. v. MEIER.

(Circuit Court of Appeals, Sixth Circuit. April 13, 1907.)

No. 1,626.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—SOLVENCY.

Solvency at the time of the filing of a petition in involuntary bankruptcy is important as a defense only when the act of bankruptcy charged is the conveyance, transfer, or concealment of property with intent to hinder, delay, or defraud creditors, under Bankr. Act July 1, 1898, § 3 (1), c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]. If the act of bankruptcy charged is the giving or permitting of a preference under subdivisions 2 or 3, insolvency must have existed at the time of the preference and solvency or insolvency at the time of the filing of the petition can only have a reflex importance as evidence.

2. SAME—SOLVENCY—VALUE OF PROPERTY CONVEYED.

Where conveyances of property by an alleged bankrupt are charged as acts of bankruptcy, under both subdivisions 1 and 2 of section 3, Bankr. Act July 1, 1898, c. 541, 30 Stat 546 [U. S. Comp. St. 1901, p. 3422], as made with intent to defraud and also as preferences, the value of the property thus conveyed is not to be computed in determining the question of solvency at the time of the filing of the petition as a defense under the first subdivision, but, if the conveyances are found not to have been fraudulent, the value of such property is to be considered in determining the question of solvency or insolvency when the conveyances were made under subdivision 2.

3. SAME—FRAUDULENT CONVEYANCE—EVIDENCE.

Bona fide conveyances intended only to secure indebtedness or to secure the grantees as sureties of the grantor do not constitute acts of bankruptcy under Bankruptcy Act July 1, 1898, § 3 (1), c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], and where such conveyances, made by warranty deed, are charged as fraudulent under said subdivision, and also as preferences under subdivision 2, it is competent for the defendant to show by parol that they were given merely as security both for the purpose of showing the absence of a fraudulent intent, and also that the value of the property may be considered on the question of insolvency in determining whether or not the conveyances were preferential; and it is immaterial that the issues are tried to a jury.

4. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—VIOLATION OF RULES.

An assignment of error, which, in violation of the rules of the court, includes different parts of a charge to the jury, cannot, after being held not well taken as to one part, be sustained as to another.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3034, 3035.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was a petition by plaintiffs in error to have the defendant in error adjudicated a bankrupt. The averments of the petition were, in substance, that the defendant, Charles H. Meier, is insolvent, and that within four months next preceding the date of this petition he had committed an act of bankruptcy.

(1) By conveying on December 30, 1904, by warranty deed to one Mary Losh an interest in a parcel of land described as in the township of Chesterfield, county of Macomb, Mich.

(2) By conveying by warranty deed of November 29, 1904, another interest in land to John Losh situated in same township and county.

(3) By conveying on November 29, 1904, by warranty deed to William D. Parker two village lots in New Baltimore, Macomb, county, Mich.

With reference to these conveyances it is alleged that each was made "with

intent to hinder, delay, and defraud his creditors," and that the said Meier by executing same "did transfer, while insolvent, a portion of his property to one of his creditors with intent to prefer such creditor over his other creditors, and for the purpose of defrauding your petitioners of their just claims."

(4) A further act of bankruptcy is charged, in that the defendant on November 22, 1904, did execute a mortgage to the Citizens' Savings Bank for $1,000 on a certain interest in land in the same county of Macomb. This is not charged to have been for the purpose of defrauding his creditors, but that it was made when insolvent and with intent to prefer the bank over his other creditors.

(5) There is then added an omnibus charge "of different and other unjust transfers and payments to other creditors which constitute preferences, but of the nature and times of which said transfers and preferences your petitioners are not aware."

He answered by denying insolvency as charged in the petition, and also denied that any of the conveyances described constituted an act of bankruptcy as charged. He denied that the debts claimed to be due to the petitioners were valid subsisting claims, and gave their origin with particularity. The answer concluded by a demand for a jury to "try the commission of the alleged acts of bankruptcy and the fact of insolvency" and "to try the questions of fact as to the various fraudulent acts and doings of the said petitioners, and any and all matters contained in said petition and in this plea and answer. * * *"

The petitioners joined issue and a jury was sworn, who, upon all the evidence, returned a general verdict of not guilty. Thereupon the court denied an adjudication of bankruptcy, and dismissed the petition. A bill of exceptions was allowed and errors assigned, and this writ sued out.

A. H. Covert and J. J. Jackson, for plaintiff in error.

Martin Crocker and F. C. Miller, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. There was no evidence tending to support the alleged preference by the mortgage to the Citizens' Savings Bank. That mortgage was made for a present consideration and in good faith, and no question has been made by counsel here as to that transaction.

2. Neither is it insisted that the conveyance to Mrs. Mary Losh was either fraudulent or a preference. Counsel before the jury substantially conceded this. Neither is it contended that the conveyance to William D. Parker was a preference. Meier owed nothing to Parker, and the conveyance to him was to protect him as surety upon certain loans which Meier desired to make.

3. One of the issues submitted to the jury was as to whether the petitioners were creditors of Meier. There was evidence tending to show that the larger part of the debt claimed by them originated in the sale of territorial rights for the sale of "Acme Food." The defense was that the food was a humbug, and the contract of sale obtained through fraud and misrepresentation. Meier seems to have been ignorant and credulous, and claimed strenuously that he did not know he was giving notes or entering into any arrangement other than a mere agency. Against this defense there was much positive evidence sustaining the good faith of the contract and the value of the "Acme Food." While the general finding may have been upon the ground that petitioners had not shown a good and

valid debt, we have no right to so assume, in view of the conflicting evidence. We allude to this only because counsel seem to be of opinion that, if the verdict could be sustained upon this defense, it was unimportant whether error had been committed in the trial of the other issues.

4. Neither can we assume that the verdict was rested upon the illegality of the contract, because made by a corporation of another state and within the state of Michigan without having complied with the law of the state requiring the filing of the charter before doing business, nor because the defendant may have been regarded as a farmer and not amenable to such a proceeding. No such question was put in issue, and no instruction was given the jury upon either question.

5. The other issues which were submitted to the jury were, first, whether the conveyances made by Meier, mentioned as acts of bankruptcy in the petition, other than those to Mary Losh and Citizens' Savings Bank, were made with intent to hinder, delay, and defraud the creditors of Meier; and, second, if so, has the defendant shown that when the petition was filed he was solvent, excluding any property so fraudulently conveyed? and, finally, if such conveyances were not fraudulent in law or fact, were they preferences within the meaning of the bankrupt law? After instructing the jury that it was "an act of bankruptcy for any person to convey any part of his property with intent to delay, hinder, or defraud his creditors or any of them," the court then said that by another provision of the law the defendant might establish as a defense against such an act of bankruptcy his solvency when the petition was filed. Upon this aspect of the case, assuming the fraudulent character of the conveyances to have been shown, the court said to the jury:

"With regard to the burden of proof in this matter as to solvency: The burden of proof is upon the respondent. That is to say, if a conveyance is made with the intent to hinder, delay, and defraud the creditors, if the aggregate of his property, exclusive of that conveyance, was sufficient to meet his indebtedness, then the petition, the law says, must be dismissed, because the man has not cheated his creditors, and they cannot complain of the transfer, so long as there remain in his hands to be reached by the processes of the law sufficient to pay his debts, therefore, if he had such an amount of property, the petition should be dismissed, because he was solvent."

By subdivision 1 of section 3 of the bankrupt act, of July 1, 1898 (30 Stat. 546, c. 541 [U. S. Comp. St. 1901, p. 3422]), it is made an act of bankruptcy when a person has "conveyed, transferred, concealed or removed or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them."

In Lansing Boiler Works v. Ryerson, 63 C. C. A. 253, 128 Fed. 701, Judge Severens, speaking for this court, said, that:

"The language of subsection 1 of section 3 is the familiar language of statutes against conveyances fraudulent as against creditors, and we think there can be no doubt that Congress intended the words employed should have the same construction and effect as have for a long period of time been attributed to those words."

By subsection "c" of section 3 of the bankrupt act, it is declared that:

"It shall be a complete defense to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this Act at the time of the filing of the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed. * * * "

Insolvency, as defined in the act, exists "whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

From these provisions of the law two things are plain: First, that in making out this defense of solvency to avoid the consequences of a conveyance made in bad faith, the property thus conveyed shall not be computed in the determination of whether the aggregate of the defendant's property at the time of the filing of the petition against him was, at a fair valuation, sufficient in amount to pay his debts; second, if the jury cannot on the evidence find such conveyance had been made with intent to defraud that all of the property of the debtor, incumbered or free, is to be taken into account in determining the question of solvency or insolvency under the second and third subdivisions of the same section. In short, solvency when the petition was filed is important only as a defense to an act of bankruptcy under subdivision 1 of section 3, and the burden of showing this is on the defendant. 2 Loveland, Bankruptcy, §§ 67, 83; West v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098. If the act of bankruptcy be the giving of a preference under subdivision 2, or the permitting of a preference through a legal proceeding under subdivision 3 of the same section, there must be a state of insolvency at the time of the preference and solvency or insolvency at the time of the filing of the petition can only have a reflex importance, if any. West v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; Loveland, Bankruptcy, § 83; In re Rome Planing Mill, 96 Fed. 813. This distinction the court below had in mind and distinctly told the jury that:

"If a conveyance is made with the intent to hinder, delay, and defraud the creditors, if the aggregate of his property, exclusive of that conveyance, was sufficient to meet his indebtedness, then the petition, the law says, shall be dismissed, because the man has not cheated his creditors, and they cannot complain of the transfer, so long as there remains in his hands to be reached by the process of the law sufficient to pay his debts."

Not one of the several requests of plaintiff in error for special charges in relation to the effect of solvency or insolvency was rightly framed.

Request No. 2 is, in substance, that if they should find that the conveyances mentioned in the petition were made "with intent to prefer" John Losh over petitioning creditors, and the defendant was insolvent "at the time of the filing of the said petition, your verdict should be for petitioners." As this request was based alone upon the claim that they were preferences and not mala fide, the fact of solvency at the time of filing the petition was unimportant if the de-

fendant was solvent when he made the alleged preferential conveyance. Request No. 4 is to the effect that if the jury should find the conveyances mentioned .were made with intent to hinder, delay, and defraud, etc., "and if you believe that at the time of said transfers. the defendant was insolvent, you should find for petitioners." This would be to deprive the defendant of the defense of solvency at the time the petition was filed against him.

The fifth request is placed upon the erroneous assumption that insolvency at the time of the filing of the petition affords the test as to whether a conveyance within four months was a preference.

The sixth request was in these words:

"Sixth. I charge you further with reference to ascertaining whether or not the defendant was insolvent at the time of the filing of this petition that, in determining the solvency or insolvency, you are not to take into consideration. the 40 acres of land which defendant transferred to John Losh under date of November 29, 1904, and that you are not to take into consideration defendant's interest in the 20 acres of land transferred by defendant with other grantors to Mary Losh December 30, 1904, and that you are not to take into consideration the two village lots in New Baltimore, Mich., transferred by this defendant to William D. Parker November 29, 1904, and you are not to take into consideration the personal property transferred by bill of sale of defendant to Harry Meier under date of December 1, 1904, but, in order to believe that the defendant was solvent on the 18th of March, 1905, you must believe that defendant had sufficient property to pay all of said petitioners' debts, together with all other obligations which defendant has admitted that he owed at the time of filing of said petition without taking into consideration any of the property above referred to, notwithstanding the fact that debtor claims. to now own real estate and the personal property above referred to."

The conveyance to John Losh was by warranty deed. "On consideration of one dollar and other good and valuable considerations." So, also, was the deed to William D. Parker. The bill of sale to Harry Meier was of certain chattels, and was filed and recorded as a chattel mortgage. Its execution is not averred to be an act of bankruptcy in the petition. There could be no adjudication of bankruptcy for an act of bankruptcy not averred in the petition. Loveland, Bankruptcy, § 69.

The fact of such a bill of sale as that referred to could only be looked to as reflecting upon the intent with which other conveyances, contemporary in time, were made, and as evidence upon the question. of solvency or insolvency when the petition was filed against the defendant or when the alleged preferences were given under subdivisions 2 and 3 of the third section. The request includes also a conveyance to Mary Losh made December 30, 1904. The answer denied that this was a conveyance made mala fide or in preference, and set up that the defendant and his two sisters owned a small parcel of land, and that Mary Losh bought .this land outright and the defendant joined in the conveyance, the consideration being $1,000, one-third of which was paid to defendant for his undivided interest. There was: no evidence whatever tending to support the charge that this was. a sale for the purpose of hindering or· defrauding creditors, and the counsel upon the hearing below conceded that no preference was thereby given Mary Losh; she not being a creditor. It was therefore proper that the value of·this interest so conveyed to Mary Losh should

not be taken into consideration upon any issue of solvency, and, if the request had been limited to that interest, it should have been given. If the conveyance of John Losh and William D. Parker were bona fide conveyances, intended only to secure indebtedness to them or to secure them as securities for the grantor, their execution was not an act of bankruptcy under subdivision 1 of section 3 of the act. See Lansing Boiler Works v. Ryerson, already cited. But the contention was and is that, as they purported to be deeds conveying the fee, it was not open to the defendant in this case to show that they were intended as mere securities. This objection is made upon the contention that only in a court of equity is parol evidence admissible to convert a deed into a mortgage. But we think that upon two grounds it was admissible to show the real purpose and intent of these deeds: First, upon the issue that the intent was to hinder, delay, or defraud his creditors we think it was admissible to show the real intent; second, upon the issue that these conveyances were intended as preferences and therefore acts of bankruptcy under subdivision 2 of section 3 of the act it was admissible to show that these deeds were intended only as securities and the value of the equity of redemption at the date of each such conveyance. In Lansing Boiler Works v. Ryerson, cited above, we held that the interest of a mortgagor might be taken into account in determining whether when the mortgage was made insolvency existed so as to constitute the security a preference. We see no reason for applying any mere technical rule of the common law to a bankruptcy proceeding upon either the issue of actual common-law fraud or solvency at the time of the giving of a deed intended only as a security. Under such issues no relief is sought against such conveyance. The grantee is not a party, and is not bound by the conclusion. But, when petitioning creditors seek an adjudication of bankruptcy based upon the averment that such deeds were either made with intent to hinder and delay creditors, or with intent to give a preference forbidden by the bankrupt act, we think it should be open to the defendant to show the actual facts and intent of the acts claimed to be acts of bankruptcy. Nothing is better settled under the decisions of the Supreme Court of the United States, as well as of the State of Michigan, than that a deed may by oral or written evidence be shown to have been intended by the parties as a mere security. Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775; Jackson v. Lawrence, 117 U. S. 679, 6 Sup. Ct. 915, 29 L. Ed. 1024. It is true that both these were cases in equity. But the powers exercised by a bankrupt court combine those of a court of law and a court of equity. Section 2 of the act of 1898, which converts the district courts into courts of bankruptcy, provides that such courts "are hereby vested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings," etc. If the question of the commission of an alleged act of bankruptcy involves intent in the execution of an instrument, or the solvency or insolvency of the defendant at the time of an alleged preference, or at the time of the filing of the petition against him, when the defense is solvency, there is no reason for saying that any evidence which would be admissible in any court having jurisdic-

tion to give relief to the grantor against a deed by showing that it was intended only as a mortgage or security shall not be admissible. If one has given a deed where the clear intent and agreement was that the deed should operate only as a mortgage, or if no debt was due and the established purpose was to indemnify the conveyee in a contemplated security, there remains in the grantor an equitable right of redemption. Any creditor of such a grantor, or any vendee, assignee, or trustee in bankruptcy would be clothed with the right to show by evidence, written or oral, the real character of the transaction, and be entitled to all the grantor's remedies under such a state of facts. 3 Pom. Eq. Jurisp. § 1196. Why, then, shall the alleged bankrupt be cut off from the right, in a proceeding to adjudge him a bankrupt, to show by the same kind of evidence the character of the transaction for the purpose of showing the absence of mala fides, or that he has an interest of value to be taken into account upon the question of solvency when the security was given? Neither is there any sound reason for saying that the effect of calling for a jury to try the issues in respect to the alleged acts of bankruptcy operates to circumscribe the powers of the court to those technically belonging to a court of law. It is true that error upon such a trial by jury can be reviewed only by a writ of error. But that is because the act confers as a privilege the right of jury trial and such a trial can only be reviewed according to the course of the common law. Elliott v. Toeppner, 187 U. S. 327, 23 Sup. Ct. 133, 47 L. Ed. 200. But in the case under consideration the only defense against the charge of an act of bankruptcy by making a deed which at common law was mala fide is that the deed was made in good faith, and intended as a mere security. Against the charge that these same conveyances were intended as illegal preferences, the only defense is that, in fact, they were mere securities, and that defendant was solvent when they were made if his equity of redemption be valued as part of his property. In such a case to give the defendant the right of trial by jury, and then deny the right to show the actual character of the conveyances, would be to give and deny the right of jury trial by the same provision of law.

There was no error in denying the sixth request. This also disposes of the exceptions taken to the admission of evidence, and the exceptions to the charge of the court in instructing the jury that it was open to the defendant to show the real purpose and intent with which the conveyances in question were made.

The court, in substance, told the jury that upon the question as to whether these conveyances constituted a preference they might estimate the value of the defendant's equity in the property so conveyed, as well as that not conveyed, and that, if the aggregate of both was enough to pay all his debts, they should upon this point find for the defendant. This part of the charge must be construed as necessarily resting upon the assumption that the jury should find that these conveyances were not mala fide, he having already instructed the jury that the defense of solvency at the time of filing of the petition must be made out exclusive of property so conveyed. Thus construed, there was no error in directing the jury to estimate the value of the equity

of redemption in determining solvency at the date of each such conveyance. We know of no authority which will justify the exclusion of equitable interests belonging to a debtor when we come to the question of his solvency or insolvency in a bankrupt proceeding. The only exclusion authorized by section 1, cl. 15, is of property "which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors." If, then, these conveyances were found not to be such as described by this provision, and therefore not acts of bankruptcy under subdivision 1 of section 3, the grantor's equity of redemption constituted a part of his property and should be estimated as its "fair value" in the aggregate of his property at the time of each said conveyance attached as a preference.

The thirty-sixth exception to the charge was to this language of the court:

"The testimony of Mr. Meier is that these conveyances, although in the form of warranty deeds, were intended by way of security, and there is no testimony to the contrary except the deeds themselves."

But in assigning error they have included in one assignment (assignment No. 7) this and so much of the charge as dealt with the question of estimating the value of the defendant's equity of redemption in determining solvency or insolvency at date of the conveyance. The eleventh rule (90 Fed. cxlvi, 31 C. C. A. cxlvi) of this court requires that each error intended to be assigned shall be separately and particularly set out, and, when it is to the charge, the assignment shall set out the part referred to totidem verbis. We have already ruled that this assignment, so far as it covers the question last alluded to, is not well taken. We cannot sustain a single assignment as partly good and partly bad without violating our rules. But, aside from this, the court was substantially right in saying that the testimony of Meier upon this point was uncontradicted. When the court undertook to state the evidence, it was the duty of counsel to call attention to evidence overlooked, if important, and give the court an opportunity of correcting the statement. This was not done. We see no sufficient reason for noticing this as "a plain error not assigned," which under strong circumstances the court at its option may do under Rule 11.

All of the errors assigned have been examined. None of them are well taken, and the judgment will be affirmed.