E. C. GATLIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68444. Promulgated March 6, 1936.

*Philip D. Johnston, Esq.*, for the petitioner.
*Eugene G. Smith, Esq.*, for the respondent.

OPINION.

ARNOLD: Under the above state of facts was the $135,223.28 received by petitioner from Pacific Factors, Inc., prior to the incorporation of petitioner's business, income to petitioner from the sale of his accounts, or was it money advanced to him in the nature of loans? Respondent contends that under the contract of March 15, 1929, petitioner sold and Pacific Factors, Inc., bought outright the accounts of petitioner's customers and the use of the words, sale and purchase, and other like expressions in the contract are controlling on the issue here presented. He further contends that any evidence tending to prove the moneys received from Pacific Factors, Inc. were received as advancements in the nature of loans, is in conflict with the contract of March 15, 1929, and is incompetent, and that such construction would be in effect placing the stamp of approval on a contract in violation of the law of California as to usury. While the contract carries language indicating a sale and purchase of the accounts, we should consider the whole contract and all facts and circumstances in connection with the method of conducting the business to ascertain the merits of the controversy. Pacific Factors, Inc., advanced petitioner 80 percent of the face value of the accounts

54

which was determined as the accepted value. Petitioner was charged with a discount at the rate of 1¼ percent per month, prorated per day until the amounts received were repaid. This discount was not taken when the money was advanced but collected when repayment was made by a charge against petitioner. This so-called discount of 1¼ percent per month, prorated per day over the time required to make collections, was equivalent to interest at the rate of 15 percent per annum during the time petitioner had the use of the money. In addition to that there was a service charge of ½ of 1 percent of the accepted value of the accounts in the schedules. Petitioner was required to take up the schedules listing accounts which were not paid and substitute new schedules of accounts, or pay the difference between the amount advanced and the amount collected in cash. The schedules were then returned to petitioner. Collections on accounts in schedules returned to petitioner were retained by him. Pacific Factors, Inc., never had the accounts in its possession and had nothing to do with their collection. Pacific Factors, Inc., brought suit to recover the amount it claimed petitioner owed it, which shows that it considered the transactions as loans. The method of handling the business indicates petitioner considered it as advancements in the nature of loans. It is proper in the construction of contracts to take into consideration the acts of the parties themselves under the contract in arriving at the true intention of the parties in entering into the contract. This does not do violence to the rule against varying the terms of a written contract by parol. 13 Corpus Juris, p. 546, sec. 517; 13 Corpus Juris, p. 549, and cases thereafter cited. *Woodard* v. *Glenwood Lumber Co.*, 153 Pac. 951; 171 Calif. 513. In the appeal of *J. W. Solof*, 1 B. T. A. 776, acquiesced in by the Commissioner, evidence was held admissible to show that a transaction with a bank, while in the form of a sale of stock to the bank, was a pledge for a loan and the amount so received was not proceeds of a sale but a loan to taxpayer.

In *Peugh* v. *Davis*, 96 U. S. 332, it was held that the rule against varying or contradicting writings by parol evidence obtained only in suits between, and was confined to, the parties to the contract and their privies and had no operation with respect to third persons, or even the parties themselves in controversy with third persons. *Sigua Iron Co.* v. *Greene*, 88 Fed. 207; *O'Shea* v. *New York C. & St. L. R. Co.*, 105 Fed. 559; *Mitchell* v. *McShane Lumber Co.*, 220 Fed. 878. See also *Gates* v. *Helvering*, 69 Fed. (2d) 277, affirming 26 B. T. A. 998, on the points here involved. In *William J. Snyder*, 11 B. T. A. 807, an absolute conveyance for a recited consideration of $23,385.41, receipt of which was acknowledged in the instrument, was shown to be a conveyance in trust, the proceeds of sale to be used by trustee to pay grantor's debts, and the acknowledged consideration

not taxable to grantor as income. In *First National Bank in Wichita*, 19 B. T. A. 744; affd., 57 Fed. (2d) 7, a customer of the bank, a dealer in securities, could not get a sufficient line of credit by direct loans on account of the limitations of the Federal banking laws. Certain tax-exempt bonds were turned over to petitioner bank, under a contract on its face a sale and purchase, with a re-purchase agreement. Interest coupons on the bonds at maturity were delivered to the customer, who collected them and paid the bank at a rate of interest provided to be paid in the sale and re-purchase agreement. Taxpayer claimed it acquired complete title to the bonds, and as the interest on the bonds was tax exempt it was entitled to exclude such interest from his income tax returns. Holding against petitioner's contentions, the Board said:

> The question here, as we view it, is not dependent upon who held the bare legal title to the bonds during the dates of sale and repurchase, but rather upon the broader issue as to whom, under the understanding between the bank and its customers, was entitled to receive, and who, as carried out, did receive the interest payments made by the issuing authorities of such bonds when collected and paid. The record shows that the true relationship between the petitioner and its customers, in these transactions, was that of a lender of money in consideration for the legal rate of interest payable on the amount advanced, and not that of an investor in the securities assigned to it by such customers. The history of these transactions and the manner in which they were carried out can lead to no other conclusion.

> \* \* \* \* \* \* \*

> The true relationship between the petitioner and the customer, in these transactions, was that of borrower and lender, in which the securities were employed as a mere convenience. In these circumstances, the *ad interim* ownership of the bare legal title to the bonds would not affect the character of the transactions between the parties or change their true relationship. *Peugh* v. *Davis*, 93 U. S. 332; *Jackson* v. *Laurence*, 117 U. S. 679; *Morris* v. *Nixon*, 1 How. 117; and see also *Russell* v. *Southard*, 12 How. 139.

Also compare *Sioux Falls Metal Culvert Co.*, 26 B. T. A. 1324. *Arthur R. Jones Syndicate* v. *Commissioner*, 23 Fed. (2d) 833, reversing *Arthur R. Jones Syndicate*, 5 B. T. A. 853.

*Arthur R. Jones Syndicate* v. *Commissioner, supra,* was a case where resort was had to a scheme to issue and in form sell preferred stock and provide for dividends to be paid at the rate of 14 percent per annum to avoid the transaction from being usurious under the Illi-nois law. Notwithstanding it violated the Illinois law as to usury and the form of the transaction was an outright sale of the pre-ferred stock, it was held to be a loan and the usurious interest deducted from taxpayer's income. The Seventh Circuit Court of Appeals, in reversing the Board, said:

> But the better reasoning sustains the view that a borrower whose necessities lead him to the door of the usurer may always show—by evidence aliunde the contract—the real character of the transaction. The very necessities of

the borrower who pays a usurious rate of interest make it necessary for courts to admit his oral testimony to dispute his written word. *Houghton* v. *Burden*, 228 U. S. 161, 170, 33 S. Ct. 491, 57 L. Ed. 780, 27 R. C. L. 212. For an additional reason such evidence is admissible against third parties. [Citing authorities.]

*         *         *         *         *         *         *

We therefore conclude that a taxpayer who borrows money at a usurious rate of interest and who, to conceal the usury, is compelled to execute a document which does not correctly describe the relationship of the parties, may, as against the government, disclose the true relationship of debtor and creditor. Sums by it paid as interest, regardless of the name by which it is called, may be deducted by the taxpayer from its income.

We hold the $135,223.28 received by petitioner from Pacific Factors, Inc., was advancements in the nature of loans and not money received outright on sales to be accounted for as gross income. The moneys received by petitioner from his customers should be included in his gross income.

Petitioner contends that the unsold goods in the hands of his customers at the time the business was incorporated was out on consignment and should therefore be included in the inventory at the time of incorporation and not treated as gross income from sales. Under Regulations 74, article 101, applicable to the year in question, it is provided that only merchandise, title to which is vested in the taxpayer, should be included in the inventory and that there should be excluded from the inventory goods sold, title to which had passed to the purchaser. The Grape Juice Concentrates were sold and delivered to petitioner's customers and a bill for the purchase price was rendered when the merchandise was shipped. Under the contract between the petitioner and his customers and the method of billing and handling the accounts, it was a sale and purchase on a deferred payment plan, with the obligation on the part of the petitioner to repurchase such quantities as were not sold in accordance with the terms of the contract. Petitioner so treated it in his dealings with Pacific Factors, Inc. The schedules delivered to Pacific Factors, Inc., contained a list of accounts, together with bills of lading, and petitioner in the schedules on which he received money certified to Pacific Factors, Inc., that the amounts listed were due and owing to him in the amount specified for personal property sold and delivered; that the accounts listed in the schedules were undisputed, open accounts for bona fide sales and deliveries of merchandise; that there were no offsets or counter claims. A form of contract between petitioner and his customers was submitted in evidence as an exhibit, in which the transactions were treated as sales, and provided for repurchase of any unsold portions of grape concentrates if the required

amount had not been resold by him. Under such circumstances, the merchandise outstanding which petitioner had not repurchased or revested title in himself should not be included in the inventory of property taken over by the corporation.

*Judgment will be entered under Rule 50.*