*994 OPINION.
Leech:
The award to petitioner, secured by the insurance policy on his life, upon which the contested premium was paid by the pension trust fund, was patently made as compensation for his services to the corporation. The amount of this premium was thus taxable income to petitioners, when' paid, unless section 165 of the Revenue Act of 1934 postpones the tax incidence. N. Loring Danforth, 18 B. T. A. 1221; George Matthew Adams, 18 B. T. A. 381. Petitioners apparently concede this.
Thus, their position rests wholly upon the contention that the pension trust fund here is within section 165 of the Revenue Act of 1934. That section provides:
SEC. 165. EMPLOYEES’ TRUSTS.
A trust created by an employer as a part of a stock bonus, pension, or profit-sharing plan for the exclusive benefit of some or all of his employees, to which contributions are made by such employer, or employees, or both, for the purpose of distributing to such employees the earnings and principal of the fund ac *995 cumulated by tlie trust in accordance with such plan, shall not be taxable under section 161, but the amount actually distributed or made available to any distributee shall be taxable to him in the year in wihich so distributed or made available to the extent that it exceeds the amounts paid in by him. Such distributees shall for the purpose of the normal tax be allowed as credits against net income such part of the amount so distributed or made available as represents the items of dividends and interest specified in section 25 (a).
This provision, in almost identical form, has appeared in every Revenue Act beginning with that of 1921. See Oscar A. Olstad, 82 B. T. A. 670. Its entirely proper purpose, complemented by section 23 (q), undoubtedly, is to encourage employers to share profits with their employees and to provide some measure of security for their employees by means of pensions, when the earning power of the employees has decreased or ended.
It may be said that this act should be liberally construed in accomplishing this laudable purpose. But the title of section 165 is “Employees’ Trust.” Section 23 (q). in complementing section 165, allows an additional deduction to:
An employer establishing or maintaining a pension trust to provide for the payment of reasonable pensions to his employees (if such trust is exempt from tax under section 165, relating to trusts created for the exclusive benefit of employees) * * *, [Emphasis supplied.]
Sharing profits, as applying to stockholders, would be meaningless since that is their right, alone, as stockholders. And, provisions for the security of stockholders of the corporation was, just as obviously, not intended. This is strikingly apparent from the wording of section 165. Thus, assuming the present pension trust fund was not only a juristic trust but, assuming also, the doubtful premise that it was a pension trust within the section, was it created “by an employer * * * for the exclusive benefit of some or all of his employees * * *”? We think not.
The term “exclusively” under comparatively similar circumstances has been strictly construed. Henriette T. Noyes, 31 B. T. A. 121, and cases cited therein. Its companion term “exclusive”, used in section 165, should be likewise interpreted.
The present pension trust fund is described in resolution of the board of directors of the Standard Transformer Co., authorizing its creation, as being “for the sole and exclusive benefit of such of the officers and employees of the company (sometimes hereinafter referred to as the Pensioners) who desire to take advantage thereof and who can qualify therefor under the rules and regulations hereinafter set forth.” The trust instrument referred to this resolution. The rules and regulations of the pension trust fund included the same statement. But that nomenclature can not and does not, alone, establish the crucial fact that the pension trust fund here was created *996 for the exclusive benefit of some or all of its employees. Peugh v. Davis, 96 U. S. 332; Jackson v. Lawrence, 117 U. S. 679; Chicago, Milwaukee & St. Paul Railway Co. v. Des Moines Union Railway Co., 254 U. S. 196. That fact is determinable from the instrument creating the trust, the rules and regulations controlling its administration, the circumstances surrounding both, and what was actually done pursuant thereto. Heryford v. Davis, 102 U. S. 235; First National Bank in Wichita v. Commissioner, 57 Fed. (2d) 7, affirming 19 B. T. A. 744; certiorari denied, 287 U. S. 636; Bank of California National Association, 30 B. T. A. 556; Carson Estate Go., 31 B. T. A. 607; affd., 80 Fed. (2d) 1007; Elgin National Watch Co., 17 B. T. A. 339.
What does the record disclose? The petitioner, admittedly, was an employee. But he was a stockholder, as well. At the creation of the pension trust fund and throughout 1934, he owned 97, and his son 19, of the 120 issued shares of stock in the company. Beyond question, he dominated and controlled the actions of the Standard Transformer Co. That company, which was the employer, could amend the rules and regulations, at any time, and in any way, except to deprive a beneficiary of a benefit awarded. It could cause the liquidation of the trust and the distribution to the beneficiaries, including the petitioner, of the policies of insurance held by the trustee. The petitioner was the manager of the pension trust fund, with the absolute right to grant or refuse any application for benefits and to fix, increase or decrease, within certain limits, the amount of the benefits awarded. The original application for insurance on the life of the petitioner, signed by him as manager of the pension trust fund, shows that the original request was for a policy of $100,000, requiring a total annual premium payment of $9,747. A policy of $25,000 was issued on this application. But its cost to the pension trust fund was more than 81 percent of the total disbursement by the pension trust fund for all the benefits awarded.
The petitioner testified that the pension trust fund was created for the purpose of providing the salaried employees of the company, who, possessing nothing but such salaries and having no interest in the corporation and would thus not be benefited by its future growth or prosperity, something in the nature of a saving which would inure to them when they became too old to work or lost their employment after years of service. If this was the purpose of the organization of the pension trust fund, then the award of more than 81 percent of its benefits to the petitioner is clearly not within that purpose. The petitioner stands outside such class of employee for which the pension trust fund was purportedly formed, because he owned 97 of the 120 issued shares of stock of the corporation and *997 thus stands in a position to enjoy, financially, any future prosperity of the company. During the four years of the existence of the pension trust fund, the only awards made were those to the petitioner and three others upon the organization of the trust.
The rules and regulations of the pension trust fund provided that “Any officer or employee who has been continuously employed by the company for six or more months, who has attained the age of twenty-one years and who is not over forty years of age, may apply to the Manager for participation in the Pension Fund. Such application shall be made on blanks to be furnished by the Manager.” There is no indication that any other of the 17 employees in question ever knew of the organization of the pension trust fund, although petitioner testified that, so far as he knew, all of the other employees were eligible for membership. Three of the four employees, including petitioner, beneficiaries of the pension trust fund, were ineligible for benefits under the rules and regulations, as then constituted, since they were all more than 40 years of age. In June 1937, the rules' and regulations of the pension trust fund were amended, nunc fro tuno, to change the limit from 40 to 55 years. The explanation for this was that the original age limit was in error.
The rules and regulations, adopted in an attempt to bring the pension trust fund within the statute, were not followed. They provided specifically that the payment of pensions awarded all employees should begin “on the first day of the month following the completion of fifteen years of continuous employment by the company from and after November 1, 1934”, and that for all officers should start “on the first day of the month following the completion of ten years of continuous service with the company from and after November 1, 1934.” These regulations were violated in every award made by the pension trust fund. Thus, it is indicated that Haig was under 50 years of age and his pension was awarded to begin at 65. Greenwalt at the time of the hearing was “30 or 35 years old” and must have been little over 30 years of age when awarded a pension of $50 per month to begin approximately 35 years hence when he reached the age of 65. Miss Sutton, an officer of the company, entitled under the rules to a pension beginning December 31, 1934, if her application was accepted, was awarded a pension of $50 per month, to begin 24 years in the future, on the 10th day of September 1958, should she then be living. This inconsistency is not explained by the provision in the regulations that “Annuity contracts and life insurance policies shall be payable according to their terms”, since the petitioner and the three other employees, to whom awards were made direct by the pension trust fund, were not the beneficiaries of the life insurance policies. The pension trust fund was the beneficiary of those policies and had merely invested its funds therein.
*998 The conclusion is inescapable that, whatever be the proper designation for the pension trust fund, it was created by the Standard Transformer Co., primarily, for the purpose of benefiting petitioner, W. F. Parker, as the majority stockholder of that company. It follows that the pension trust fund here was not created for the exclusive benefit of any or all of its employees, as such.
The action of the respondent in including the contested premium payment in petitioners’ income, as additional compensation to petitioner, W. F. Parker, is affirmed.

Decision will be entered for the respondent.