T.C. Memo. 2000-248

UNITED STATES TAX COURT

LORETTA JEAN RANDOLPH, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10540-97.                    Filed August 9, 2000.

Loretta Jean Randolph, pro se.

J. Anthony Hoefer, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined a deficiency in
petitioner's 1994 Federal income tax of $11,148 and additions to
tax under sections 6651(a)(1)[1] and 6654 of $2,787 and $575,

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

respectively. The issues for decision[2] are (1) whether petitioner realized income of $50,000 under section 61(a)(12) from the discharge of indebtedness; (2) whether she is liable under section 6651(a)(1) for the addition to tax for late filing; and (3) whether she is liable under section 6654 for the addition to tax for failure to pay estimated tax. We hold that petitioner realized income of $50,000 from the discharge of indebtedness and that she is liable for the additions to tax.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Kearney, Nebraska, when she filed her petition in this case.

On or before December 31, 1977, petitioner's mother and stepfather (the Pattersons) formed Murl Patterson, Inc., a corporation organized under the laws of the State of Nebraska (corporation). Thereafter, commencing on or about December 30, 1977, and continuing at least through January 1, 1983, the Pattersons made a series of gifts of the corporation's common stock to their three daughters and their spouses. By January 1,

---

[2]Additional issues determined by respondent in the notice of deficiency and not included by petitioner in the petition are deemed conceded. See Rule 34(b)(4).

1983, petitioner and her now former spouse owned 604 shares of the corporation's stock out of a total of 4,000 shares outstanding.

On April 10, 1989, petitioner received a check made payable to her in the amount of $50,000 and written on an account maintained in the name of the corporation. The check memo line contained the following notation: "10,000 gift 40,000 loan".

Also on April 10, 1989, petitioner signed a promissory note (note) in which she promised to pay the corporation $50,000. The note was payable on demand and did not provide for the payment of interest. Beneath petitioner's signature was the typed instruction to "SEE BACK". The reverse side of the note contained the following typed statement: "Unless sooner terminated, as herein provided, upon the deaths of both Murl E. Patterson and Dorothy E. Patterson, this note shall be cancelled." The Pattersons signed and dated that statement as of November 21, 1991.

Petitioner made no payments on the note. On a Schedule L, Balance Sheet, filed with its 1993 corporate income tax return[3]

---

[3]At trial, petitioner objected to the admission of the corporation's 1993 return and 1994 return on hearsay grounds. We admitted the 1994 return under the so-called business records exception to the hearsay rule. See Fed. R. Evid. 803(6). We deferred ruling on her objection to the 1993 return. After consideration, we admit the 1993 return also under the business record exception to the hearsay rule.

(continued...)

the corporation listed the note among its assets as of yearend 1993 under the category "trade notes and accounts receivable". In addition to petitioner's $50,000 note, the assets included in the trade notes and accounts receivable category included notes given to the corporation by petitioner's two sisters relating to certain amounts they also had received from the corporation. On a Schedule L filed with its 1994 corporate income tax return the corporation listed the note among its assets as of the beginning of 1994 under the category "trade notes and accounts receivable".

During 1993 and 1994, the Pattersons caused a reorganization of the corporation (reorganization) under which its assets were divided among it and three newly formed corporations; i.e., Charity Field Farms, Inc. (Charity), MDA Farms, Inc. (MDA), and M & D Hay & Cattle Co., Inc. (M & D). Pursuant to the plan of reorganization, during 1994 petitioner and her former spouse surrendered their shares of common stock of the corporation in exchange for shares of common stock of Charity and M & D.[4] Neither the corporation nor Charity, MDA, or M & D included the note as an asset as of yearend 1994 on the Schedules L they filed

---

[3](...continued)
At trial, we also reserved ruling on objections to the following exhibits: 10-R, 16-P, 19-P, 32-P, 35-P, 36-P, 37-P, 38-P, 39-P, 44-P, and 58-P. The party offering each exhibit failed to overcome the objections to that exhibit at trial or in the briefs. Consequently, we do not admit these exhibits.

[4]Richard Randolph also received shares of Charity's class A voting preferred stock.

with their corporate income tax returns for that year. The record does not reveal whether at any time petitioner had assets sufficient to repay the $50,000.

During 1995, petitioner completed, executed, and submitted to the Internal Revenue Service (the Service) a Form 1040, U.S. Individual Income Tax Return, for the 1994 taxable year (1994 Form 1040). Before submitting the Form 1040, petitioner struck the words "penalties" and "perjury" from the verification portion of that form (jurat) which appeared immediately above her signature. Before that action, the jurat read: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." The 1994 Form 1040 reflected no tax payments made for that year by petitioner, either through withholding or estimated payments.

Respondent determined that petitioner's 1994 Form 1040 did not constitute a valid Federal income tax return because she did not sign it under penalty of perjury. In the notice of deficiency, respondent included $50,000 in petitioner's income on the ground that the corporation had relieved her indebtedness to it by that amount in connection with the reorganization. In addition, respondent determined that petitioner was liable for an addition to tax under section 6651(a)(1) because she had not filed a valid 1994 Federal income return by its due date and for

an addition to tax under section 6654(a) because she did not pay sufficient estimated tax for 1994.

OPINION

Section 61(a) provides that gross income means all income from whatever source derived. That section has been interpreted broadly to encompass all gains except those specifically exempted by Congress. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Gross income, however, generally does not include the value of property acquired by gift or advancements in the nature of loans. See sec. 102(a); Beaver v. Commissioner, 55 T.C. 85, 91 (1970); Gatlin v. Commissioner, 34 B.T.A. 50 (1936). On the other hand, it generally does include income from the discharge of indebtedness. See sec. 61(a)(12); United States v. Kirby Lumber Co., 284 U.S. 1 (1931); see also, e.g., Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673; Cozzi v. Commissioner, 88 T.C. 435, 445 (1987). The gain to the debtor from the forgiveness of debt results from the freeing up of assets that otherwise would have been required to pay off the debt. See United States v. Kirby Lumber Co., supra; Milenbach v. Commissioner, 106 T.C. 184, 202 (1996). Whether a debt has been discharged depends on the substance of the transaction. See Cozzi v. Commissioner, supra. When a debt has been canceled is determined on the facts and circumstances of each case. See id.; Miller Trust v. Commissioner, 76 T.C. 191,

195 (1981); <u>Estate of Bankhead v. Commissioner</u>, 60 T.C. 535, 539 (1973). Petitioner bears the burden of proving that a discharge of indebtedness does not result in taxable income. See Rule 142(a); <u>Miller Trust v. Commissioner</u>, <u>supra</u>.[5]

Respondent contends that the corporation lent petitioner $50,000 in 1989 and that the debt remained unpaid and an asset of the corporation until April 11, 1994, when enforcement on the debt expired by operation of law.[6] Respondent further contends that the corporation canceled petitioner's obligation on the note during 1994. Thus, respondent asserts, petitioner realized income during 1994 in the amount of $50,000 from the discharge of indebtedness.

Petitioner, on the other hand, contends that she realized no taxable income during 1994 relating to the forgiveness of debt. She maintains that when she received the $50,000 from the corporation the Pattersons had agreed to treat the payment as a

---

[5]The burden of proof provisions of sec. 7491 do not apply here because the examination in this case began prior to July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726.

[6]In support of this contention, respondent relies on Neb. Rev. Stat. sec. 25-205 (1995 Reissue), which reads in pertinent part as follows:

> <u>Actions on written contracts, on foreign judgments, or to recover collateral.</u> (1) Except as provided in subsection (2) of this section, an action upon a specialty, or any agreement, contract, or promise in writing, or foreign judgment, can only be brought within five years; * * *.

gift. According to petitioner, the Pattersons gifted $10,000 of the $50,000 during 1989, and agreed to gift the remaining $40,000 over a 4-year period commencing in 1990 by canceling $10,000 of her indebtedness to the corporation each year until the loan was paid in full. Petitioner claims that by yearend 1993 the Pattersons had gifted the total $50,000 to her by forgiving all of her indebtedness to the corporation.

A payment constitutes a gift if it is given in a spirit of "'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses.'" Commissioner v. Duberstein, 363 U.S. 278, 285 (1960). The intent of the transferor determines whether a payment constitutes a gift or something else; e.g., a loan or compensation for services. See id. at 285-286; see also Goodwin v. United States, 67 F.3d 149, 151-152 (8th Cir. 1995); Estate of Cronheim v. Commissioner, 323 F.2d 706, 707 (8th Cir. 1963), affg. T.C. Memo. 1961-232.

For tax purposes, a valid debt requires the existence of an unconditional obligation to repay. See Milenbach v. Commissioner, supra at 197; Midkiff v. Commissioner, 96 T.C. 724, 734-735 (1991), affd. sub nom. Noguchi v. Commissioner, 992 F.2d 226 (9th Cir. 1993); Howlett v. Commissioner, 56 T.C. 951, 960 (1971). Thus, an essential element for a payment to constitute a loan is the existence of a debtor-creditor relationship; i.e., there must be an intent on the part of the recipient of the funds

to make repayment and an intent on the part of the person advancing the funds to require repayment. See Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970); Mercil v. Commissioner, 24 T.C. 1150 (1955). We look to both testimony and objective facts to ascertain intent. See Busch v. Commissioner, 728 F.2d 945, 948 (7th Cir. 1984), affg. T.C. Memo. 1983-98; Commissioner v. Makransky, 321 F.2d 598, 600 (3d Cir. 1963), affg. 36 T.C. 446 (1961). Testimony is not determinative, particularly where it is contradicted by the objective evidence. See Busch v. Commissioner, supra; Glimco v. Commissioner, 397 F.2d 537, 540-541 (7th Cir. 1968), affg. T.C. Memo. 1967-119.

In the family context, a transfer of money may be a gift or a loan. See Hughes v. Commissioner, T.C. Memo. 1992-438. Furthermore, in the case of a bona fide loan, a gift may subsequently result should the loan be forgiven. See id.

In the instant case, the $50,000 payment to petitioner came from the corporation and not directly from the Pattersons. Generally, a distribution by a corporation to a shareholder out of accumulated earnings and profits may constitute a dividend taxable to the shareholder as ordinary income. See secs. 301, 316; Commissioner v. Gordon, 391 U.S. 83, 88-89 (1968); Hardin v. United States, 461 F.2d 865, 872 (5th Cir. 1972). A formal dividend declaration is not required for a corporate distribution to constitute a dividend. See Sachs v. Commissioner, 277 F.2d

879, 882 (8th Cir. 1960), affg. 32 T.C. 815 (1959); Paramount-Richards Theatres, Inc. v. Commissioner, 153 F.2d 602, 604 (5th Cir. 1946), affg. a Memorandum Opinion of this Court; Yelencsics v. Commissioner, 74 T.C. 1513, 1529 (1980). All of the facts surrounding a transaction must be considered to determine whether a payment by a corporation to a taxpayer constitutes a dividend or something else; e.g., a loan, a gift, or compensation for services. See John Kelley Co. v. Commissioner, 326 U.S. 521, 526 (1946); Hardin v. United States, supra; see also Milenbach v. Commissioner, 106 T.C. at 195. A corporation's cancellation of a shareholder's indebtedness may constitute a constructive dividend or compensation for services. See Shephard v. Commissioner, 340 F.2d 27, 29-30 (6th Cir. 1965), affg. per curiam T.C. Memo. 1963-294; see also Estate of Shapiro v. Commissioner, T.C. Memo. 1987-126.

Petitioner introduced no evidence directed toward establishing the corporation's intent in paying her $50,000 during 1989.[7] The Pattersons controlled the corporation, and they played an integral part in the decision for the corporation

---

[7]This Court does not consider statements in a brief as proof. See Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992); Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988). Although petitioner indicated that she wished to testify at trial, she declined to swear under oath or affirm or otherwise verify that her testimony would be true and made under penalty of perjury. Accordingly, we could not permit her to testify. See Fed. R. Evid. 603; DiCarlo v. Commissioner, T.C. Memo. 1992-280; cf. United States v. Ward, 989 F.2d 1015 (9th Cir. 1992).

to make the payment to petitioner.  They would have been qualified to testify as to the corporation's intent in making the payment.  Petitioner, however, did not call them as witnesses.

The preponderance of the evidence in the record supports respondent's position that the corporation lent petitioner $50,000 during 1989.  The memo line on the corporation's check to petitioner indicates that $40,000 of the $50,000 paid constituted a loan.  Although the memo line further denotes that $10,000 represented a gift, other evidence contradicts that notation and nothing in the record explains the contradiction.[8]  On the same day the corporation gave her the $50,000, petitioner executed a note promising to pay it $50,000 on demand.  In addition, the corporation included the note as an asset valued at $50,000 on its books and on the Schedule L it filed with its tax returns.  Furthermore, the notation on the reverse of the note implies that the Pattersons considered petitioner to be indebted to the corporation and that she would be required to adhere to the terms specified on its face unless the Pattersons died before she paid off the note.  Other evidence in the record, including the testimony of one of petitioner's sisters and of Raymond A. Hervert, the corporation's attorney, is either neutral on this issue or tends to support respondent's position that the

---

[8]Neither party offered any evidence as to when the memo line was completed or identifying the author of the memo entry.

corporation lent petitioner $50,000 during 1989.  Accordingly, we find that petitioner has failed to prove that the $50,000 was not a loan.

Respondent determined that petitioner realized income during 1994 from the cancellation of indebtedness.  In support of that position, respondent relies on the running of the period of limitations for enforcement of the note and the elimination of the note from the Schedules L of the corporation and the three spinoff corporations.  Petitioner did not submit any proof in support of her position that the Pattersons forgave $10,000 of the note each year for 5 years, resulting in the note's being paid in full by the end of 1993.

Although not controlling, the running of the period of limitations on the time within which the corporation could have commenced an action against petitioner to recover the debt supports respondent's position.  See Miller Trust v. Commissioner, 76 T.C. at 195.  Additional support for respondent's determination is found in the manner in which the corporation handled the note on its 1994 return.  The corporation included the $50,000 note as an asset at the beginning of 1994 on Schedule L.  However, neither the corporation nor any of the three spinoff corporations included the note on its tax return as an asset at yearend 1994.

Petitioner introduced no evidence showing that the corporation forgave the note before the end of 1993. Other evidence in the record is either neutral on this issue or tends to support respondent's position that the corporation had not forgiven petitioner's debt to it before the end of 1993. The failure of the corporation or any of the spinoff corporations to include the note on its tax return as an asset at yearend 1994 supports respondent's position that the corporation canceled petitioner's indebtedness to it during 1994. Petitioner has submitted no evidence which shows otherwise. Consequently, we find that petitioner has failed to carry her burden of proving respondent's determination incorrect, and we sustain respondent's determination that petitioner realized income during 1994 from the cancellation of indebtedness in the amount of $50,000.[9]

Addition to Tax Under Section 6651(a)

Respondent also determined that petitioner is liable for the addition to tax under section 6651(a)(1). Respondent contends that petitioner is liable for that addition to tax because she did not file a timely and valid tax return. According to

---

[9]Petitioner does not claim, nor does the record establish, that the discharge occurred while she was insolvent; accordingly, we do not address the question of whether the so-called insolvency exception would be applicable here. See sec. 108(a)(1); Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 70 F.2d 95 (5th Cir. 1934), revg. 27 B.T.A. 651 (1933); Gershkowitz v. Commissioner, 88 T.C. 984, 1005 (1987).

respondent, the 1994 Form 1040 was not a valid Federal income tax return because petitioner failed to sign the form under penalty of perjury.

Section 6651(a)(1) imposes an addition for failure to timely file a return unless it is shown that the failure was due to reasonable cause and not due to willful neglect.  Petitioner bears the burden of proof.  See Rule 142(a); Baldwin v. Commissioner, 84 T.C. 859, 870 (1985).

We agree with respondent that the 1994 Form 1040 petitioner submitted to the Service does not constitute a valid return because she did not sign the return under penalty of perjury. See sec. 6065; see also, e.g., Cupp v. Commissioner, 65 T.C. 68, 78-79 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977).  Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1).

Addition to Tax Under Section 6654(a)

Respondent further determined that petitioner is liable for an addition to tax under section 6654(a) for 1994.  Respondent contends that petitioner is liable for the addition to tax under section 6654 because she did not make any payments of estimated tax during 1994.

Section 6654(a) provides for an addition to tax "in the case of any underpayment of estimated tax by an individual".  Unless

petitioner shows that a statutory exception applies, imposition of the addition to tax under section 6654(a) is automatic where payments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute.  See <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 222 (1992); <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 913 (1988); <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20-21 (1980).

Petitioner has offered no evidence to show that any of the statutory exceptions apply.  Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6654(a) for the year in issue.

We have carefully considered all remaining arguments made by petitioner for a result contrary to that expressed herein, and, to the extent not discussed above, find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.