MECHANICS STATE BANK *et al. v.* KRAMER SERVICE, INC., *et al.*

(Division A. Feb. 20, 1939.)

[186 So. 644. No. 33589.]

**Price & McLain**, of McComb, and **Price, Price & Phillips**, of Magnolia, for appellants.

Green, Green & Jackson, of Jackson, Jas. A. Wiltshire, of Magnolia, G. L. Martin, of Prentiss, and R. B. Reeves, of McComb, for appellees.

Argued orally by **O. W. Phillips**, for appellant, and by **Forrest B. Jackson**, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Stripped of unessential details, and laying aside the awkward state of the pleadings as to which no real point has been made in the argument before us, the controlling facts are that prior to the date next mentioned a partnership had been conducting a large poultry business known as the Pike Poultry Plant, and had become indebted to appellant bank in a sum of approximately seven thousand dollars, secured by a deed of trust on all the personal property of the plant. This plant was located on land belonging to appellee, Kramer Service, Inc., to which the partnership held a lease with option to purchase. The partnership had become indebted to the Kramers to an amount of about three thousand dollars, which was unsecured.

There had been some internal dissensions among the partners, and the bank determined to foreclose in pais under its deed of trust, and advertised the sale for June 18, 1932. It had become doubtful whether, if the per-

sonal property were sold apart from the land, it would bring the full amount of the bank's debt; and likewise it was apprehended by the Kramers, that if all said personal property were so sold, they would lose their unsecured open account. Upon consideration of this situation it was the conclusion of the two creditors to pool their securities and assets, relative to this business, so that it could be preserved as a going concern, and that by a harmonious management it could be enabled eventually to pay out all owed to both said creditor parties. In short, that the assets so pooled would be worth more than the total sums due both the creditors, but when separated or disrupted, there would not be enough to pay either or both of them.

Therefore, on the date aforesaid, the parties, together with R. D. Brock, entered into the following agreement:

"It is agreed between Mechanics-State Bank, Kramer Service, Inc., and R. D. Brock, that Brock will bid up to the amount of the Bank's indebtedness at sale of property of Pike Poultry Plant this date, and, if successful, bidder, hold the same as Trustee to carry out the provisions of this agreement.

"Kramer Service, Inc., agrees to convey the land on which the Pike Poultry Plant is located, as described in existing option, and that all the property, real and personal, be sold, and the said Bank have a first lien on all of said property, including the land, for its debt, amounting to approximately $7,000 plus expenses of handling transaction, and plus approximately $1,500 to be advanced by said Bank for operating capital of the Poultry Plant, the $1500 to be due and payable in six months, remainder to be made due in one year, with understanding that if the interest be paid thereon and reductions made as later agreed, it will carry same over a period of five years.

"Kramer Service, Inc., shall have a second lien on all of said property, including all property on which the Bank now has a claim for approximately $9,000 inter-

est on same to be paid semi-annually and the principal to be paid after the principal of the Bank's debt shall have been paid in full, all interest to be 8%."

In accordance with this agreement, Kramer Service, Inc., the owner of the land, conveyed it to G. E. Windle, one of the former partners, the recited consideration being $8,725, for which Windle gave a note, and which was the purchase price of the land plus the previously mentioned unsecured account of the old partnership; and to secure this sum the Kramer Service, Inc., took a deed of trust from Windle, this trust deed covering not only the land but all the personal property of the plant, and it was recited therein that the security was subject to the deed of trust to the bank, the latter instrument having been executed to the bank five days previously. The deed of trust to the bank covered not only the personal property but also the land.

This arrangement was entered into by these two creditors, as is evident, not only in a spirit of mutual helpfulness to each other, and perhaps also to keep going a helpful business in the community, but in a mood of a remarkable optimism—remarkable when the general situation prevailing throughout the country at that time is taken into account. It is undisputed in the evidence that between the persons who made the agreement not a word was said which took into contemplation a failure of the new set-up. But it did fail and rapidly went from bad to worse; not a cent either of interest or principal was paid by the mortgagor to either or any of the parties hereto; so that on November 19, 1934, the bank filed its bill to foreclose its deed of trust and for the appointment of a receiver, which appointment was made. The bank, in the meantime, had advanced not only the $1,500 mentioned in the above-quoted agreement, but about $1,300 besides. At the time this bill was filed and the receiver was appointed, or soon thereafter, a complete inventory and appraisal was had of all the property, real and personal, and it showed a value of only $6,815.74. At the

foreclosure sale subsequently ordered, the bank bought in all the property, real and personal, for $6,050.

The foreclosure was invalid in so far as the Kramer Service, Inc., was concerned, because it was not made a party to the foreclosure bill. It is an invariable rule that junior encumbrances must be made parties defendant to a suit to foreclose a senior encumbrance, as they have the right to appear and pay off the senior encumbrance and per consequence to see to the taking of the account and that it be correctly taken. Miss. Chancery Prac., sec. 116, p. 121. The chancellor so held and appellants concede that the decree was correct in this respect.

But even so, it is evident that both these creditors are in for a heavy loss. In this unfortunate situation the Kramers insist that since the parties did not specifically take into account in their agreement of June 18, 1932, what would be the result in case of a failure of the further operations of the poultry plant, the status quo as of that date should be restored and that the Kramers should be adjudged to have a vendor's lien for the purchase price of the land, superior to the bank's deed of trust, conditioned upon the payment by the Kramers to the bank of the $1,500 which the bank advanced under the agreement; and the chancellor upheld that contention.

Whatever any one of us might think of this proposition in point of natural equity, we, as members of this Court, must follow the law of the land, and the law is that a vendor's lien may be waived, and is waived when the vendor carves out his own security, and that security is inconsistent, under the circumstances, with the retention of the vendor's lien, particularly when a third party has acted upon the faith of that waiver. 66 C. J., sec. 1157, pp. 1259-1231, and the cases cited in the notes. Here there was an express agreement that the bank should have a first lien on all the property, including the real estate, and this was carried out by the subsequent formal deeds of trust, as already mentioned. The retention of a

vendor's lien would be wholly inconsistent with that agreement, when on the faith thereof the bank in effect postponed its first proposed foreclosure and advanced the said $1,500 additional money.

There is nothing that the court can do here other than to leave the parties in the situation in which their stated contracts, as made, have now placed them; and upon the whole record, we are obliged to say that the bank is entitled to foreclose its deed of trust as a first lien, the junior encumbrancer having now come in as a party, and for the amount due on June 18, 1932, plus the $1,500 advanced under the agreement of that date, plus interest, etc.

Affirmed in part, and in part reversed and remanded.