**UNITED STATES of America,**
Appellant,

v.

**W. W. BOYD, Jr., et al., Appellees.**

No. 16537.

United States Court of Appeals
Fifth Circuit.

June 28, 1957.

478

Robert Coe, Lee A. Jackson, Frederic G. Rita, Ellis N. Slack, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Thomas R. Ethridge, U. S. Atty., Euple Dozier, Asst. U. S. Atty., Oxford, Miss., for appellant.

Richard B. Booth, Aberdeen, Miss., Hugh A. Hopper, Corinth, Miss., for appellees.

Before BORAH, RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The matter here presented concerns the extent and circumstances under which a non-judicial sale under a valid power to foreclose a mortgage lien superior to a Federal tax lien extinguishes or affects the Government lien or its rights to a Federal Court foreclosure or other protective decree.

The case was presented wholly on the pleadings and extended argument of counsel which there and here reduces the pertinent facts for our problem to this simple undisputed summary:

Boyd (Taxpayer) was the owner of the real property in Aberdeen, Mississippi. On December 1, 1952, there was filed for record a valid first mortgage deed of trust in favor of Prudential Life Insurance Company of America (Mortgagee) securing a debt of $9,000. Subsequently, on various dates between January 19, 1953 and October 22, 1953, assessment lists were received by the Collector which fixed the date of the Government's lien, Section 3671 of the 1939 Code, 26 U.S. C.A. § 3671 (see from 1954 Code, 26 U.S.C.A. § 6322), then applicable. And, on various dates between May 1, 1953 and April 7, 1954, Notices of Federal Tax Lien were filed for record for taxes, interest and penalties totaling $10,278.04. Nothing [1] further was apparently done to

---

1. An abortive proceeding had been going on in the State Court. October 6, 1953, Bradley Lumber Company filed a *lis pendens* under Section 380, Mississippi Code of 1942, followed by suit, October 16, 1953, in the Circuit Court asserting a materialman's lien against the property. The Government appeared and answered as a party and asserted the priority of its tax lien. In March 1955 the Circuit Court entered final judgment fixing the Bradley Lumber Company's materialman's lien as superior in rank to the Federal tax lien. March 29, 1955, motion for new trial was filed by the Government. Faced then presumably

enforce its lien by the Government until the present action was filed May 28, 1956, under Section 7403, 1954 Code, 26 U.S. C.A. § 7403, then applicable (Section 3678 of 1939 Code), seeking foreclosure.

In this Government suit for foreclosure, all persons claiming liens were made parties, and the complaint prayed [2] that the Government liens be determined, enforced, and foreclosed as prior and paramount except—here very important —as to the lien of Prudential (Mortgagee).

The Mortgagee, in its answer filed June 21, 1956, set forth the fact, accepted by all parties, that the mortgage " * * * deed of trust is and was at the time of the filing of this suit in the process of being foreclosed, the date of the foreclosure sale having been set for June 22, 1956 * * *." It asserted what was acknowledged by the Government's prayer "that said deed of trust constitutes a prior lien to that lien claimed by * * *" the Government and then claimed further that the Mortgagee has " * * * every right to proceed with the foreclosure of said deed of trust * * * [and it] * * * will pay into court any surplus funds resulting from said foreclosure sale to await the further orders of this court."

Subsequently, by supplemental answer, September 21, 1956, the Mortgagee set forth the admitted fact that on June 22, 1956, the property was sold to Purchaser (Bradley Lumber) for $11,029.80, from which, after deducting principal, interest, and all charges, the balance remaining of $739.41 was paid into the registry of the Court for distribution by it.

The Court, by judgment entered October 22, 1956, decreed that the Government's liens were thereby recognized, enforced and impressed upon the property as prior and paramount to the interest of all parties other than Mortgagee and that the Government was authorized and permitted to redeem the property. While some language of the decretal findings[3]

with the imposing array of adverse decisions and apprehensive, perhaps, of the reversal of the Supreme Court of Mississippi, 224 Miss. 33, 79 So.2d 474, 86 So. 2d 19, soon to come (October 1955) in United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725, see note 4, United States v. Morrison, 5 Cir., 247 F.2d 285, the Court granted the Government a new trial March 30, 1955. October 28, 1955, the Government filed a motion to amend the judgment praying that the State Court declare that the Federal tax liens in the sum of $10,278.04 were prior to the materialman's lien of Bradley. That motion remains undetermined.

The Government was thus fully aware of the title and conflicting lien situation.

2. The prayer of the complaint was:
"1. That the liens and claims of the plaintiff be recognized and enforced.

"2. That the Court order, adjudge and decree that the liens and claims of the plaintiff are upon the property hereinbefore described and are prior and paramount to the interest of all other parties to said property with the exception of the interest of the Prudential Insurance Company of America as described in paragraph X.

"3. That the Court order, adjudge and decree that the liens and claims of the plaintiff upon the real property * * * be foreclosed and said property be sold * * * and that the proceeds * * * be applied to satisfy plaintiff's claim and liens * * *.

"4. That a money judgment * * * be granted against the defendants W. W. Boyd, Jr. * * *.

"5. That the plaintiff have such other and further relief as the Court deems just."

3. Without separate opinion or formal findings of fact, the final judgment stated:
"That the tax lien of the United States which is impressed on the above described land should be recognized and enforced;

"That after the institution of this suit Prudential * * * foreclosed its mortgage by selling the * * * property on June 22, 1956, and that Bradley Lumber Company, * * *, was the successful bidder, purchasing said property for the sum of $11,000.00;

"That this mortgage * * * held by * * * Prudential * * * was prior to the tax lien of the United States of America. That since the lien of * * * Prudential * * * has been extinguished and removed by the foreclosure sale, the tax liens of the plaintiff [the Government] upon the property * * * are prior and paramount to the interest of all other parties to said property.

would indicate that the Government now has lien superior to all, including the Purchaser at the non-judicial foreclosure sale, it is plain, from the express reservation of a right to redeem that the Court did, and meant to, hold that the mortgage foreclosure sale otherwise extinguished the Government's lien.

In the principal attack here that the Court erred in not decreeing a foreclosure and judicial sale, the Government asserts in its two-page argument, that the foreclosure of the mortgage did not affect[4] the Government's liens in any manner as the United States was not a party to it and the buyer at the mortgage foreclosure sale took title subject to the lien which can be removed only as Federal laws permit. Receding somewhat from the extreme position that the Court must at all odds decree a foreclosure, the Government then asserts that if the cases urged[5] are sound, there must at least have been a finding on evidence that the value of the equity over and above prior liens was not sufficient to realize anything of value for junior liens. It insists that the District Court's recognition of a right of redemption is no real substitute for the asserted statutory right of fore-

closure since "the amount paid would have to be appropriated by Congress, obviously a cumbersome and troublesome business."

The Government, in brief and on argument, is vague as to just what the interest of the United States is in this property, or what would be sold or purchased at a Federal Court judicial foreclosure sale. It acknowledges, as it has to, both that the Mortgagee's lien is superior since first recorded,[6] and that superiority is a naked empty thing unless those succeeding to the mortgagee by assignment, transfer, sale or foreclosure, likewise have an ownership superior to the inferior Federal Tax lien. But if, as apparently now contended, the Court was absolutely required to foreclose and order a judicial sale, there would be no "property and rights to property," Section 6321, of Taxpayer in this real estate unless it were first held that the Mortgagee's foreclosure under power of sale did not wipe out the mortgagor's (Taxpayer) interest as well as that of junior encumbrancers.

The Government meets this headon and takes the awesome position that when

---

"That the plaintiff should be authorized and permitted to redeem the above described property; * * *.

"It is therefore ordered, adjudged and decreed as follows:

"1. That the liens and claims of the plaintiff [the Government] are hereby recognized and enforced.

"2. That the liens and claims of the plaintiff be and they are hereby impressed upon the property * * * and are prior and paramount to the interest of all other parties to said property.

"3. That the plaintiff is hereby authorized and given permission to redeem the * * * property.

"4. That a money judgment in the amount of $10,278.04, * * * is hereby granted against W. W. Boyd, Jr. * *."

4. They press heavily: Metropolitan Life Insurance Company v. United States, 6 Cir., 107 F.2d 311, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400; United States v. Kensington Shipyard & Drydock Corp., 3 Cir., 169 F.2d 9, 11.

5. Miners Savings Bank of Pittston, Pa. v. United States, D.C.Pa., 110 F.Supp. 563, 571; Oden v. United States, D.C.La., 33 F.2d 553; Minnesota Mutual Life Insurance Co. v. United States, D.C.Tex., 47 F.2d 942.

6. 26 U.S.C.A. § 6321. "If any person liable to pay any tax neglects * * * to pay the same * * *, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, * * * belonging to such person." From Section 3670 of the 1939 Code, 26 U.S.C.A. § 3670.

26 U.S.C.A. § 6323. "(a) * * * Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed * * *

"(1) * * * In the office designated by the law of the State * * * in which the property subject to the lien is situated * * *." From Section 3672 (a) (1) of the 1939 Code, 26 U.S.C.A. § 3672.

the Government files a Section [7] 7403 suit to foreclose, the Court is inexorably compelled to foreclose, has no flexible equity power of adaptation and all procedures, valid under state law for judicial or non-judicial foreclosure of mortgages, fall under the weight of the National Sovereign's insatiable, relentless pursuit of its tax collection.

But we decline to accept what is thus in substance the major premise of the Government. For, as in the case of comparable actions brought by private persons to quiet title under 28 U.S.C.A. § 2410, we believe that, whatever procedural complexities there may be in invoking one or the other of these routes,[8] once the matter is before the Court, Congress intended that the Court function with the full traditional flexibility of the Chancellor, United States v. Morrison, 5 Cir., 247 F.2d 285.

Indeed, broader language could hardly be suggested since the Court, Section 7403(c), is required to "* * * proceed to adjudicate *all* matters involved therein and finally determine the merits of *all* claims to and liens upon the property * * *." As though this were not enough, Congress, presumably conscious of the purpose of the change, amended the Act, 49 Stat. 1648, Sec. 802, to substitute the word "may" for "shall" in the predecessor to Section 7403, so that it now reads, note 7, supra, "* * * in all cases where a claim or interest of the United States therein is established, [the Court] *may* decree a sale of such property * * * and a distribution of the proceeds * * *."

Merely because the statute speaks in terms of foreclosure does not compel the court to use that remedy. If under controlling legal principles, the lien does not exist, if it has been lost, if the property is not that of the taxpayer, if the Federal tax lien is junior to undisputed prior liens which will exhaust the full value of the property, a decree of foreclosure would be neither appropriate nor effective. A court required by the express terms of the statute to adjudicate all matters, the merits of all claims to and liens upon the property and, in the event of a sale, distribute the proceeds in accordance with the findings respecting the interests of all parties and the United States (Section 7403(c), note 7, supra) has the full capacity, and corresponding duty, to assure that the liens

---

7. 26 U.S.C.A. § 7403. Action to enforce lien or to subject property to payment of tax

"(a) Filing.—In any case where there has been a refusal * * * to pay any tax * * *, the Attorney General * * * may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States * * * with respect to such tax * * * or to subject any property, or whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax * * *.

"(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

"(c) Adjudication and decree.—The court shall, * * * proceed to adjudicate *all* matters involved therein and finally determine the merits of *all* claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may* decree a sale of such property, * * *, and a distribution of the proceeds * *

according to the findings of the court in respect to the interests of the *parties* and of the United States." (Emphasis supplied)

Similar provisions were contained in Section 3678 of the 1939 Code, 26 U.S. C.A. § 3678. See also complementary Section 7424, 26 U.S.C.A. § 7424, from Section 3679 of the 1939 Code, 26 U.S. C.A. § 3679.

8. For a comparative analysis between a Section 3679 (Section 7424 of 1954 Code) and 28 U.S.C.A. § 2410 proceeding, see Clark, Federal Tax Liens and Their Enforcement, 33 Virginia Law Review 1957, pages 13, 32–38. See also 9 Mertens, Federal Income Taxation, § 54.52 for background interrelationship of Section 7403, Section 7424, and 28 U.S.C.A. § 2410 (Formerly 28 U.S.C.A. §§ 901–906). Undoubtedly, there is an overlap between Section 7424 and 28 U.S.C.A. § 2410, particularly as to the removal of subordinate United States tax liens. But the two provisions also cover different types of cases. See opinion by General Counsel, quoted in 9 Mertens, supra.

and interests are effectually respected in accordance with the court's determination of validity, rank and priority.

Intertwined in the mistaken insistence that the procedural mechanics of Section 7403 compel a mandatory foreclosure, is the assertion that since the lien of the Government can be *extinguished* only by the means prescribed, a court is powerless to do anything except foreclose. This springs from Metropolitan Life Insurance Company v. United States, 6 Cir., 107 F.2d 311, certiorari denied 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400. There, starting from the unsound premise that an action by a property owner to quiet title either under the predecessor of 28 U.S.C.A. § 2410 or the somewhat comparable provisions there pursued (Section 3679 of the 1939 Code now Section 7424) is one to *extinguish* the lien of the United States, rather than what it really is—a determination that a tax lien does not exist, has been extinguished, or is inferior in rank, the Sixth Circuit, by a divided court, affirmed the decree for want of jurisdiction to do anything except foreclose. The anomaly was that as purchasers from mortgagees of a prior recorded mortgage, the plaintiffs seeking relief by removal of the cloud on their title were held remediless while, at the same time, as a substantive matter, it was extremely doubtful that the Government had any real enforceable lien, certainly not prior to that of the assignor mortgagees. Add to that the fact that since, on such reasoning, the court is powerless to "extinquish" a Government lien—i. e., hold it inferior to another— the inevitable consequence is that with the court compelled to take a hands off attitude, the Government's tax lien automatically acquires a priority regardless of its true rank. Neither the result nor the reasoning of that case seems satisfactory.[9]

■ The Court had the power then both as a procedural and substantive matter to determine the validity and rank of the liens. Consequently, we are brought to a consideration of whether the court was correct in the conclusion that the mortgage foreclosure cut off all rights save a special right to redeem. Was it valid under Mississippi law? Does Section 7403 declare non-Federal Court foreclosure sales invalid?

■ Under Mississippi law, mortgages may be foreclosed by equity foreclosure decree and sale which cuts off the equity of redemption, Hubbard v. Massey, 192 Miss. 95, 4 So.2d 230, 494, or by a non-judicial sale under a power. If the statutory requirements are observed the sale under power is a perfect foreclosure and likewise cuts off the equity of redemption. Dibrell v. Carlisle, 48 Miss. 691, Sims v. Hundly, 2 How. 896, 3 Miss. 896. But it is inaccurate to describe these as a private sale, a private foreclosure, or a private sale under power for, the statute[10] requires that

---

9. The case has come in for a considerable criticism, see Removal of Federal Income Tax Lien as Affected by Power of Sale in Mortgage, 49 Yale Law Journal 1106; also 53 Harvard Law Review 888; Clark, Federal Tax Liens and Their Enforcement, 33 Virginia Law Review 13, 32–38, and footnote 79.

10. Section 888, Mississippi Code 1942, (1956 recompilation):
"§ 888. How lands sold under mortgages and deeds in trust.
"All lands * * * sold under mortgages and deeds of trust hereafter executed, shall be sold in the manner provided by section one hundred eleven of the constitution for the sale of lands in pursuance of a decree of court, or under execution. All lands sold at public outcry under deeds of trust hereafter executed * * * shall be sold in the county in which the land is located, or in the county of the residence of the grantor * * *. Sale of said lands shall be advertised for three consecutive weeks preceding such sale, in a newspaper published in the county, * * * and by posting one notice at the courthouse of the county where the land is situated, for said time, and such notice and advertisement shall disclose the name of the original mortgagor or mortgagors in said deed of trust or other contract. No sale of lands under a deed of trust or mortgage, shall be valid unless such sale shall have been advertised as herein provided for, regardless of any contract to the contrary * * *."

the sale be advertised for three consecutive weeks in a newspaper published in the county where the land lies, and that a notice be posted at the courthouse door.

■ The parties are in agreement that in Mississippi there is no right of redemption after the sale. All that exists is the commonly accepted traditional equity of redemption which is the right, "the mortgagor has, prior to foreclosure, to discharge the indebtedness and thus clear his property from the encumbrance of the mortgage," 37 Am.Jur., Mortgages, §§ 824, 823. This equity of redemption is established by Mississippi statute.[11]

Whether, as in the case of foreclosure by equity suit, Mechanics State Bank v. Kramer Service Inc., 184 Miss. 895, 186 So. 644, junior encumbrancers must be given notice of the sale under a power to afford them an opportunity to protect their interests to and enable them to exercise their equity of redemption, see Worthington v. Wilmot, 59 Miss. 608, is unnecessary to determine. For the mortgagee's answer filed in the proceedings disclosed that before the commencement of the Section 7403 suit, the mortgage was in the process of being foreclosed and the property would be sold, as it was, on June 22, 1956. Thus the time and place of the public sale was known before it occurred, but despite knowledge and the right under Mississippi law to redeem, the Government, for ought that appears, neither attended the sale nor made any effort either to exercise the equity of redemption or to determine whether a greater price[12] might have been obtained.

■ The result is that when a mortgage has been validly foreclosed by a non-judicial sale under a power, it is the consequence of such prior lien and the right of enforcement under it which destroys the junior encumbrance whether it be a private or Federal tax lien. The extinguishment or destruction of the junior lien comes from the nature of the superior lien and not from a later subsequent equity determination (whether under 28 U.S.C.A. § 2410, or Section 7403, or a 7424 proceeding) that this has been the effect of enforcement of the senior lien. Consequently, when the superior lien has been validly foreclosed, it cuts off all junior liens including those of the Government. Trust Company of Texas v. United States, D.C.Tex., 3 F.Supp. 683; United States v. Ryan, D.C.Minn., 124 F.Supp. 1, 10, cf. Minnesota Mutual Life Insurance Company v. United States, D.C.Tex., 47 F.2d 942; Oden v. United States, D.C.La., 33 F.2d 553. See also Removal of Federal Income Tax Lien as Affected by Power of Sale in Mortgage,[13] 49 Yale Law Journal 1106

11. Section 892, Mississippi Code of 1942.
"Where there is a series of notes * * secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them, to the effect that upon a failure to pay any one note or installment * * * interest * * * taxes * * * insurance premiums * * * that all the debt secured thereby should become due and collectable, * * * the debtor, or *any interested party,* may at any time, *before* a sale be made under the terms and provisions of such instrument * * * stop a threatened sale under the powers contained in such instrument, or stop any proceeding in any court to enforce such lien, by paying the amount of the note, or installment then due * * *."

12. The non-judicial foreclosure held as prescribed for Mississippi State Court judgment executions (note 10, supra) is similar to a Federal Court foreclosure. See Fed.Rules Civ.Proc. rule 69, 28 U.S. C.A., "* * * The procedure on execution, in proceedings supplementary to and in aid of a judgment, * * * shall be in accordance with the practice and procedure of the state in which the district court is held * * * except that any statute of the United States governs to the extent that it is applicable * * *"; and also 28 U.S.C.A. § 2001 requiring public sale at the courthouse or upon the premises sold and Section 2002 requiring four, rather than three, weeks published notice.

13. This article criticizing the contrary holding in Metropolitan Life Insurance Co. v. United States, 6 Cir., 107 F.2d 311, points out that a power of sale "confers upon the mortgagee a contingent, but irrevocable, power of attorney to convey title to the premises in question. * * * Since power of disposal has long been

at 1110, 1111; 53 Harvard Law Review 888.

Since the mortgagor can grant the power of sale and acting pursuant to it, under state property law, the mortgagee can cut off the rights of junior liens by a sale once completed, does Section 7403 reflect any Congressional purpose to invalidate such sale or prevent a mortgagee continuing in the exercise of his right of sale once commenced? Three possible situations may arise: (1) where the sale under power has been completed after the recording of the Government tax lien but before the Government institutes a Section 7403 foreclosure; (2) where no steps have been taken to exercise the power until after commencement of the Government's 7403 suit; and (3) the instant case, in which sale under power is commenced *before* the institution of Section 7403 proceeding, but is completed during its pendency.

■ As to the first, we think, as the cases discussed above, other than Metropolitan Life Insurance Co. v. United States, supra, so clearly hold this is an effectual extinguishment of the Government's tax lien. To say that it thereafter continues in any form (apart from particular statutory rights, if any, of redemption after sale) is to destroy the absolute priority which Section 6323 was so plainly intended to provide. See concurring opinion United States v. Security Trust & Savings Bank, 340 U.S. 47, 51, 71 S.Ct. 111, 95 L.Ed. 53, 57. If by the mere filing of a Section 7403 proceeding, the Government, whose tax lien has been effectually cut off under state property law, can demand a foreclosure of its inferior lien and thereby compel either a resale of the property or a judicial determination of the value of the property as of the date of sale, the adequacy of the

sale price obtained and the value of the equity available for junior liens, every such sale is vulnerable for the whole limitation period whether made a week, a year, or more before a 7403 proceeding is commenced. If this were to happen, no one could safely buy at such a sale under power and without ready marketability, mortgagees could not afford to sell under such powers. The result would be to force all mortgage foreclosures into the courthouse either to clog state court dockets with the United States as a party, 28 U.S.C.A. § 2410, or add further congestion to the United States District Courts if removed, 28 U.S.C.A. § 1444, or filed, 26 U.S.C.A. § 7424, there.

We cannot construe the statute to ease the burden of the judiciary, state or federal, but it is inconceivable to us that the Congress, aware of the widespread use of this mechanism in security transactions, has re-enacted the various predecessors of Section 7403 with the purpose in mind of declaring these commonly accepted state procedures for sale under power invalid against a Federal tax lien. With the use throughout the states of foreclosure by sale under power so extensive and carefully regulated, as in Mississippi, by action of the states, we should, unless a fair reading of the Act compels it, avoid a construction with the portentous consequences which the Government's contention would precipitate.

As to the second category, the matter can be, and is, left for future determination.

■ When it comes to the third category, the instant case, we think all that has been said concerning the first situation applies with equal vigor. If the right exists in the mortgagor to grant the power and the right exists in the mortgagee to exercise it even to the point

recognized as a primary attribute of 'property', the power of sale, even though conditional, has been described as a property right [citing Jackson v. Lawrence, 117 U.S. 679, 682, 6 S.Ct. 915, 29 L.Ed. 1024] * * * Likewise, it is the prevailing rule that subsequent private lienors acquire their interests subject to non-

judicial foreclosure in which they have no right to participate or to be joined as parties. [citing 3 Jones, Mortgages (1928) 975, that a purchaser at a sale conducted pursuant to exercise of the power takes the mortgagor's title divested of all encumbrances made since the creation of the power.]"

of cutting off the right of the Government as a junior lien holder, then there is nothing in Section 7403 which appears to give the Tax Collector the right to stop the mortgagee in midstream in the exercise of the right already undertaken. If so, the Government is then able to engraft upon the mortgage a right in it to determine the manner and means of its foreclosure despite the fact that under Section 6323 the tax lien prior to recordation " * * * shall not be *valid* as against any mortgagee * * *." It is also subjecting to a foreclosure a "property and rights to property," Section 6321, which the taxpayer does not own since, by contract valid under state law, he has conveyed to the mortgagee the mortgage interest *and* the irrevocable power of sale. There is nothing in 7403 to indicate a Congressional purpose to whittle away this absolute priority, allow the Tax Collector to make these business decisions for the mortgagee as to the best way to assure maximum recovery by sale, nor subject the mortgagee to the cost, expense and likely delay of the equity foreclosure proceedings initiated under Section 7403. If the Government can compel a shift from sale under power to judicial foreclosure, the mortgagee alone runs the risk of delays from congested dockets, possible exhaustion of the value of the security by passage of time with increase in the amount in default or depreciation in the security itself, and all costs may fall altogether on the mortgagee, see Section 7424(c) and 28 U.S.C.A. §§ 2410(c), 2412(a).

Nor is there an easy middle ground by which, in the pending Section 7403 action, the Court has the right to review the sale made pursuant to the power of sale proceedings first commenced. For here again, it presents such practical problems as leads to the certain conviction that Congress meant no such disturbance to well known business procedures essential to the flow of credit and the effectual enforcement of security. For purchasers at sales under power, before making bid or payment, would first have to ascertain with respect to all

possible Federal judicial districts whether proceedings had been precipitated either by the Government under Section 7403, or by other lienors under 7424, and in all possible state jurisdictional state courts, whether the Government under 28 U.S.C.A. § 2410(c) had exercised the right for affirmative relief by cross claim for foreclosure of its lien. Necessity for any such inquiry, the difficulty of determining the location and identity of all such courts, Section 2410(a), or court proceedings, cf. United States v. Feazel, D.C.La., 49 F.Supp. 679, would adversely affect the marketability of title and again make such sales unusable as a practical matter.

Likewise, as is here presented, there would be the question: what is to be done about the sale if the court were to find the sale price inadequate? Who is to reimburse the purchaser for the sale price paid by him if, on a second sale, the property brings less than on the former? Upon what basis can the mortgagee who has received the payment on the sale under the power be compelled to restore the consideration? Who is to pay the difference if the judicial sale brings a lesser amount?

And no such construction is necessary to protect the revenues of the United States. It has first, during the pendency of the procedure for sale under power the right, as it had here, to exercise the equity of redemption if, in fact, the Government is of the opinion that the property has a value in excess of the prior liens. And, second, the District Court read the statutes of the United States as a composite body to allow to the Government under 28 U.S.C.A. § 2410(c) a statutory right to redeem after sale within one year. This statute specifically provides that "Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem."

In this day we decline to accept the suggestion in the brief here that the United States Government is bereft of cash or so impotent in its credit that

somehow, in some way, it cannot raise the sum of $11,000 with which to redeem. If the property is worth more than the $11,029.80 received, the Government can protect its lien fully by redeeming the property. If there is not a sufficient belief that the property is in fact of a value in excess of this, then the Government's appeal is almost moot since it asks the court to set aside the sale to hold another one even though when then completed, the Government's recovery would be zero.

On an undisputed record, the court was right in holding that the foreclosure under power of sale was valid. The Government's rights have been fully preserved by the right of redemption which continues for the full year not counting the time it has been suspended during the pendency of this appeal, and we agree that no further action was or is now necessary.

Affirmed.