**UNITED STATES of America**

**v.**

**Morris C. GOLDBERG, etc., et al.**

**North Carolina National Bank, Successor by Consolidation to Security National Bank of Greensboro, Indenture Trustee, Greensboro, North Carolina, Appellant.**

**No. 15073.**

United States Court of Appeals
Third Circuit.

Argued Jan. 22, 1965.

Decided Aug. 3, 1965.

H. Francis DeLone, Dechert, Price & Rhoads, Philadelphia, Pa. (Jere A. Young, Philadelphia, Pa., on the brief), for appellant.

Joseph Kovner, Department of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., on the brief), for the United States.

Edwin P. Rome, Blank, Rudenko, Klaus & Rome, Philadelphia, Pa. (Jack R. Bershad, Philadelphia, Pa., on the brief), for Samuel Weinrott and Edward J. Breen, receivers-appellees.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

FORMAN, Circuit Judge.

North Carolina National Bank (Bank) as successor Trustee [1] was the holder of an Indenture of Mortgage, dated September 1, 1955, made by the Pennsylvania Laundry Company (Laundry), a corporation of the State of Pennsylvania, to secure an issue of first mortgage and collateral trust bonds. The indenture covered the real estate and personal property of Laundry in Philadelphia, Pennsylvania. In addition Laundry assigned to Trustee a note fo $1,500,000 made by Gold-Tex Fabrics Corporation (Gold-Tex), a North Carolina corporation operating a denim mill in York County, South Carolina which note in turn was secured by a first mortgage on the real and personal property of Gold-Tex.

On Laundry's default with $600,000 principal allegedly still due, Bank filed a suit on March 2, 1964 in the Court of Common Pleas of York County, South Carolina to foreclose its mortgage on the real and personal property of Gold-Tex. Laundry and the United States were also made party defendants.

The Bank also started a proceeding in the Common Pleas Court of Philadelphia County on April 14, 1964 to foreclose its mortgage on the real and personal property of Laundry. All defendants in both suits were duly served.

On March 27, 1964, on petition of the United States, Bank's foreclosure proceeding was removed from the York County, South Carolina Court to the United States District Court for the Western District of South Carolina. The United States answered and cross claimed in the removal suit asking that its tax claims be declared senior to all claims except the Bank's mortgage and that its liens be foreclosed against the property of Gold-Tex.

On May 22, 1964 the United States filed a complaint in the United States District Court for the Eastern District of Pennsylvania seeking relief against Morris C. Goldberg under Sections 7401, 7402 and 7403 of the Internal Revenue Code of 1954. Joined or later added as defendants were 15 Goldberg controlled corporations, including Laundry and Gold-Tex, with properties located in Pennsylvania, New Jersey, New York and South Carolina.

The complaint alleged, among other things, that Goldberg and each of the defendant corporations had filed false tax returns and that taxes and penalties had been assessed and filed as liens against their properties, the aggregate amount of which ran into millions of dollars. It sought foreclosure of tax levies and to subject the properties of certain defendants to the payment of taxes. The appointment of receivers was requested to aid in enforcing the tax liens and among the reasons advanced for the appointment of receivers was that Bank might cause a forced sale of Laundry's assets under its foreclosure at a sacrifice price detrimental to all interests concerned.

On June 8, 1964, on order of the United States District Court for the Eastern District of Pennsylvania, Receivers were

---

1. As the result of the consolidation of Security National Bank of Greensboro and American Commercial Bank.

appointed. The order enjoined any interference with the possession by the Receivers of any property subject to the receivership except that Bank was specifically granted permission to prosecute its mortgage foreclosure proceedings in the United States District Court for the Western District of South Carolina. On June 12, 1964 an order was filed amending the order of June 8 by adding other parties as defendants.

On June 18, 1964 the United States District Court for the Western District of South Carolina entered an order with the consents of the United States, Gold-Tex, and the Bank, to the appointment of a special master to take testimony and file a report recommending the procedure to be followed in foreclosure of Gold-Tex's property. A hearing was scheduled for July 10, 1964. However, before this hearing date, on motion of the Receivers and the United States and without notice to Bank, the United States District Court for the Eastern District of Pennsylvania, on June 26, 1964, amended its order of June 8 by deleting the permission to Bank to prosecute its foreclosure suit against the property of Gold-Tex in the federal court of South Carolina.

On receiving notice of the entry of the above order Bank applied to the Eastern Pennsylvania District Court to amend it to permit the foreclosure suit in the United States District Court for the Western District of South Carolina to proceed. On July 8 a hearing was held but the amendment to the order was declined, the court suggesting that Bank file a written motion seeking the amendment. Such a motion was filed on July 17, 1964. The motion was argued on July 29, 1964 and the District Court reserved its decision.

While the matter was under advisement, on August 7, 1964, Bank filed notices of appeal of the orders of the United States District Court for the Eastern District of Pennsylvania of June 8, 12, and 26, 1964. On August 31, 1964 a memorandum opinion was filed by the United States District Court for the Eastern District of Pennsylvania holding that it could not act on Bank's motions since it was without jurisdiction to amend the orders after the notice appealing them had been filed.[2]

The Receivers contend that Section 7403[3] of the Internal Revenue Code of

2. In its memorandum opinion the Court stated:

"The Court was much impressed with Bank's legal position as set forth in its brief and so stated at the hearing (Docket Paper #54, page 10). Having read the briefs of the parties and considered their arguments, the Court is of the opinion that Bank's motion should be granted. This opinion is based on the law as set forth in United States v. Boyd, [5 Cir.,] 246 F.2d 477, 484, 485, cert. den. 355 U.S. 889 [78 S.Ct. 261, 2 L.Ed.2d 188] (1957). See also Farmers' Loan & Trust Co. v. Lake Street Elevated R. R. Co., 177 U.S. 51, 61, 62 [20 S.Ct. 564, 44 L. Ed. 667] (1900); United States v. Bank of New York & Trust Co., 296 U.S. 463 [56 S.Ct. 343, 80 L.Ed. 331] (1963); Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180 [72 S. Ct. 219, 96 L.Ed. 200] (1952); Mattei v. V./O Prodintorg, 321 F.2d 180 (1 Cir. 1963)."

3. "§ 7403. Action to enforce lien or to subject property to payment of tax

"(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

"(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

"(c) Adjudication and decree.—The court shall, after the parties have been duly notified of the action, proceed to ad-

1954 gives the United States District Court for the Eastern District of Pennsylvania exclusive jurisdiction in this case to exercise a mandatory duty to adjudicate all claims and liens on all property of the taxpayers; to restrain all actions in any courts which interfere with the statutory duties imposed upon it and that property upon which foreclosure proceedings have been instituted prior to the action by the United States is not excepted.

Alternatively the Receivers argue that since, as they view this case, jurisdiction of the state courts and the federal court is not concurrent and the subject matter in litigation in one is not within the cognizance of the other the date of actual possession of the res determines the priority of jurisdiction. In each of the state actions, they submit, only a mortgage foreclosure against a single property is involved while in the federal court the res consists of an

> "entire complex of real estate, the tangible and intangible assets of the defendant taxpayers, the going-concern business entities, all liens and claims of secured and unsecured creditors, local and state taxes, the foreclosure of the federal tax liens and the adjudication of all matters involved. * * *"

They further assert:

> "As a practical matter, if a prior state foreclosure action is not required to yield, it would defeat the very purpose of this receivership, which is to preserve going-concern values. Only in this way can the full value of the assets be realized. Only by continuous operations by Receivers until, if necessary, customers can be found for the far-flung and varied properties of the taxpayer will the rights of the government, the taxpayers and indeed of all creditors be fully protected."

The Receivers have compiled a formidable array of rules of construction and cases to support their theory that Congress in enacting Section 7403 intended that the jurisdiction of the District Court shall be exclusive of all other proceedings. They interpret the use of the words "all" and "shall" in Section 7403 (c), particularly in the light of the amendment of 1936 [4] in which the word "may" is substituted for the word "shall" occurring the second time, as conclusively demonstrating the intent by Congress that the whole number of matters, claims and liens are commanded to be adjudicated and determined in the District Court leaving to its discretion only whether to decree a sale.

■ The respectable precedents brought forward by the Receivers are beyond dispute for the propositions for which they individually stand. We simply are not persuaded that either the language of Section 7403(c) in itself or the application of the rules and cases proffered by the Receivers support their proposition that Congress intended that a receiver under Section 7403 should be empowered to interfere with a prior fore-

---

judicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and distribution of the proceeds of such sale according to the findings of the court in respect to the interest of the parties and of the United States.

"(d) Receivership.—In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary or his delegate during the pendency of such proceedings that it is in the public interest, may appoint a receiver with all the powers of a receiver in equity. Aug. 16, 1954, 9:45 a.m., E.D.T., c. 736, 68A Stat. 874."

4. Section 7403(c), as amended in 1936, is: "The court *shall* * * * adjudicate *all* matters * * * finally determine the merits of all claims to and liens upon the property and in all cases where a claim of the United States therein is established, *may* decree a sale of such property * * *." (Emphasis supplied.) Act of June 22, 1936, c. 690, Sec. 802(a), 49 Stat. 1743.

closure action by a senior lienor of a specific res in which the foreclosure court has acquired exclusive control over the property essential to its jurisdiction. Much the same proposition was made by the Government in United States v. Boyd,[5] where such broad construction of Section 7403 was also rejected.

Turning to the alternative proposition made by the Receivers, among the cases they call upon to sustain it is one decided in this court—United States v. Kensington Shipyard & Drydock Corp.[6] This case is readily distinguishable from the one at bar. In Kensington the Government filed tax liens against a holding corporation, Aerodynamic Research Corporation, on March 31, 1947 and April 3, 1947, in the District of Columbia because Aerodynamics had transferred some of its assets to its subsidiary Kensington Shipyard and Drydock Corporation. The Commissioner of Internal Revenue levied a jeopardy assessment against the latter and filed a lien against it in the same amount in Philadelphia on April 3, 1947.

On May 20, 1947 the Government filed a complaint against Aerodynamics in the United States District Court for the District of Columbia under Section 3678 of the Internal Revenue Code of 1939[7] for the collection of the taxes. A receiver was appointed for Aerodynamics on that day. Subsequently he was directed to take complete possession of the subsidiaries, including Kensington, which occurred on June 25, 1947.

The Commonwealth of Pennsylvania settled two tax liens against Kensington on June 25, 1947 and August 6, 1947, respectively. On August 27, 1947 the Commonwealth filed, in effect, a general creditors bill against Kensington in a state court of Pennsylvania in which it sought to have Kensington's property charged with the payment of Pennsylvania creditors of Aerodynamics and Kensington. On its motion for a receiver, appointment ·was postponed. Meanwhile the Government's complaint was filed in the United States District Court for the Eastern District of Pennsylvania praying for the appointment of an ancillary receiver of Aerodynamics and Kensington and for determining and foreclosing the Government tax liens and marshalling other liens upon the property. Receivers were appointed on December 4, 1947 by the United States District Court for the Eastern District of Pennsylvania.

Thus a contest was raised as to whether the state or the federal court had jurisdiction. The Commonwealth contended that its suit vested jurisdiction over the assets of Kensington in the state court and moved to dismiss the Government's complaint in the federal court which was denied. On appeal by the Commonwealth this court affirmed the District Court.

The Receivers in the case at hand urge the application of Kensington because, as they say, this court held that the jurisdiction in the Kensington case was not concurrent, that the federal matter was not cognizable in the state court and that the date of actual possession by the Federal Receiver determined priority of jurisdiction, calling attention to the quotation in the Kensington opinion and of language used by the Court of Appeals of the Tenth Circuit in Ingram v. Jones:[8]

"On the other hand, where the issues in the subsequent suit are different from those involved in the foreclosure of mortgages, fall under the weight of the National Sovereign's insatiable, relentless pursuit of its tax collection." 246 F.2d 477, 480–481 (1957).

---

5. In Boyd the Court of Appeals of the Fifth Circuit characterized the contention of the Government thus:
"The Government * * * takes the awesome position that when the Government files a Section 7403 suit to foreclose, the Court is inexorably compelled to foreclose, has no flexible equity power of adaptation and all procedures, valid under state law for judicial or non-judicial

6. 169 F.2d 9 (3 Cir., 1948).

7. The predecessor of Section 7403 of the Internal Revenue Code of 1954.

8. 47 F.2d 135, 141 (10 Cir. 1931).

first suit and the subject matter is not identical, that is, where the two suits involve different controversies notwithstanding they relate to the same property, there can be no infringement of the jurisdiction of the court in which the first suit is pending by reason of the institution of the second suit in a court of concurrent jurisdiction. Under such circumstances, the court first aquiring possession of the property may retain it until the suit pending before it is determined."

The Receivers in this case overlook the continuity of the federal suits in the District of Columbia and in the Eastern District of Pennsylvania, as established by this court in the Kensington opinion. A receiver had been appointed by the District of Columbia Court even before the Commonwealth's taxes were settled. This case also differs from Kensington in that here the mortgages are concededly senior to the federal tax liens and are the subject of the prior actions both in the South Carolina and Pennsylvania State Courts. In Kensington the state court could not effect the discharge of the federal tax liens while the state courts in this case can do so. Indeed, unlike the state court action in Kensington, the Bank in the South Carolina action joined the United States as a party defendant which resulted in the removal by it to the federal court in South Carolina and the subsequent filing of a cross-claim by the United States in which it itself, sought the foreclosure of its tax liens against the property of Gold-Tex.[9]

Contrary to the view of the Receivers Kensington teaches that absent its unique features, jurisdiction would reside in the state courts under the circumstances of this case. The quotation from Ingram v. Jones,[10] emphasized by the Receivers, reads as consistently on the given premises of this case, for a holding of jurisdiction in the state courts, as it did for the purposes for which it was cited in Kensington under the facts of that case.

Neither does Moran v. Sturgiss [11] lend the Receivers the comfort they claim. The influence accorded it by this court in Kensington, as argued by the Receivers, is not applicable here. In Moran a proceeding was instituted in a New York State Court for the dissolution of a steamboat company. A receiver was appointed, but before he qualified by filing the required bond, libels were filed in the federal court of the Eastern District of New York to enforce maritime liens against six vessels of the company pursuant to which the United States Marshal took possession of the vessels. In an attempt to sustain the superiority of the state court receivership proceedings over the federal court libel action the receiver, having qualified, applied for and was granted an injunction by the state court restraining the libellants from proceeding with their suits. After affirmance by the highest state court, on writ of error to the United States Supreme Court it was held that the state court had no jursidiction in personam over the libellants as holders of maritime liens when the libels were filed; that the District Court had jurisdiction and that the judgment on review was in effect an unlawful interference with the federal court proceedings. The factual pattern in Moran, as in Ingram v. Jones, simply does not relate to the basic circumstances underlying the actions in the state courts and federal court in the instant appeal.

Although the Government joined with the Receivers in the application to the District Court to delete from the order of June 8, 1964 the proviso excepting from restraint the continuance of the Bank's foreclosure action in the South Carolina Court, it has now recanted from that position for it concedes, at least as far as the prior proceedings in South Carolina, that the Section 7403(d) receiver-

---

9. As to the Pennsylvania foreclosure intervention is authorized under Pa.R.Civ. P. 2327, 12 P.S.Appendix.

10. Supra note 8.

11. 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981 (1894).

ship action does not empower the District Court to restrain the Bank from continuing to foreclose its senior lien in the South Carolina Court wherein it had made the United States a party.

█ Therefore we find ourselves in disagreement with the alternative view of this case as taken by the Receivers. We conclude that the subject matter of the suits in both the federal and state courts is identical—the foreclosure of liens against the same property—that their respective jurisdictions are concurrent and that the earlier filing of the Bank's foreclosure suits in the Common Pleas Court of Philadelphia County and in the Court of Common Pleas of York County, South Carolina (removed by the United States to the United States District Court of South Carolina) conferred jurisdiction and constructive possession upon those courts not subject to interference by the Receivers by virtue of this proceeding under the Authority of Section 7403 of the Internal Revenue Act of 1954.[12]

A final point made by the Receivers deserves discussion. They contend that the issue as to whether the Bank shall be permitted to proceed with its foreclosure of the property of Laundry in the Common Pleas Court of Philadelphia was not presented to or passed upon by the District Court and hence cannot now be raised on appeal. The Government agrees with this position pointing to the memorandum opinion of the District Court, also as expressing the same notion.[13]

On the other hand the Bank maintains that this appeal is not from the memorandum opinion of the District Court of August 31, 1964, but from the injunctions contained in the orders of June 8 and June 26, 1964, and that in the oral argument before the District Court on July 29, 1964 "both counsel for the Bank (Docket Paper #54, p. 39) and counsel for the largest unsecured creditors (Docket Paper #54, pp. 32–37) clearly apprised the court that Bank questioned the right of the court to enjoin either of the pending first mortgage foreclosure actions."

Considerable confusion in the record attends these contentions and counter-contentions. To begin with, the complaint filed by the United States in the District Court pursuant to which the Receivers were appointed alleges in Paragraph II(u) that the Bank is made a defendant

"for the reason that it claims a mortgage lien upon and against certain real estate and personal property owned and held by the defendants GOLD TEX FABRICS CORPORATION, and PENNSYLVANIA LAUNDRY COMPANY. The said defendant, North Carolina National Bank, has instituted suits to foreclose its mortgage in the Court of Common Pleas of Philadelphia County, Pennsylvania, and in the Court of Common Pleas, County of York, South Carolina (the latter case has been removed to the United States District Court on Motion of the United States)."

Further references to the Bank's pending mortgage foreclosure actions are con-

---

12. See Harkin v. Brundage, 276 U.S. 36, 43, 48 S.Ct. 268, 72 L.Ed. 457 (1928); United States v. Kensington Shipyard and Drydock Corp., 169 F.2d 9 (3 Cir. 1948); United States v. Boyd, 246 F.2d 477 (5 Cir. 1957), cert. den., 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188 (1957); United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).

13. It is true that the Memorandum Opinion of the District Court of August 31, 1964 appears to be aimed only at the

Bank's foreclosure action in South Carolina for it states therein:

"On June 26, 1964, this Court entered an Order (Docket Paper #31) amending the Order of June 8, 1964, in which it deleted the proviso permitting the Bank to continue its foreclosure proceeding which deletion had the effect of staying the foreclosure action. It is this portion of the June 26, 1964 Order to which the Bank objects, and by this motion, seeks to have that Order amended to contain the proviso of the Original Order. * * * "

tained in Paragraphs IV(b), (c) and (e) of the complaint as follows:

"(b) Said real estate has been mortgaged by the defendant, Pennsylvania Laundry Company to the defendant North Carolina National Bank of Greensboro * * * [P]laintiff's liens are prior liens upon and against said real estate subject only to the liens of the said North Carolina National Bank of Greensboro, Indenture Trustee as aforesaid, to the extent that such liens are established.

"(c) The said North Carolina National Bank as Indenture Trustee, has instituted a mortgage foreclosure suit in the Court of Common Pleas of Philadelphia County. This plaintiff has not been joined as a defendant in said action and said action is now pending in said Court."

\* \* \* \* \* \*

"(e) * * * [S]aid real estate [Gold's Tex's real estate in South Carolina] is also mortgaged to the defendant North Carolina National Bank, Indenture Trustee, * * *. Plaintiff alleges that the said North Carolina Bank, Indenture Trustee, has filed an action to foreclose on said bonds and mortgage in the Court of Common Pleas of the County of York, South Carolina, upon and against the real estate and personal property which is covered by said mortgage and said case has been removed to the United States District Court on motion by this plaintiff where it is now pending. Plaintiff alleges that the real estate and personal property in South Carolina covered by said mortgage is worth very nearly enough, if not enough, to satisfy in full liabilities under said bonds."

Again in Paragraph VII(c) the complaint reads:

" * * * [U]nless a stay of the suit in the *Court of Common Pleas of this County* [Philadelphia] is entered by this Court, it is believed that defendant, North Carolina National Bank, Indenture Trustee, will proceed to foreclose upon the assets of Pennsylvania Laundry Company and cause said assets to be sold at a sacrifice price to the detriment and disadvantage of interested parties herein." (Emphasis added.)

Although it is apparent that the complaint alleges the pendency of the Bank's foreclosure proceedings both in the Pennsylvania and South Carolina Courts (the latter removed to the United States District Court for the Western District of South Carolina) only the necessity for a stay of the Bank's foreclosure proceeding in the Common Pleas Court of Pennsylvania County is mentioned in Paragraph VII (c) as indicated above.

The order of June 8, 1964 does not except the Pennsylvania foreclosure from the sweep of its injunctive coverage. In its Paragraph XII it specifies only that the removed proceeding in the federal court of South Carolina shall not be affected thereby. Paragraph XIII of the order of June 26, 1964 amending Paragraph XII of the order of June 8, effected the omission from the latter of the proviso excepting the proceeding in the federal court of South Carolina and the result was to draw under the injunction of June 8 all suits at law or in equity including both the Pennsylvania and the South Carolina federal proceedings.

█ The motion of the Bank filed July 29, 1964 sought only the reinstatement of the proviso originally contained in Paragraph XII of the order of June 8 excepting the Bank's foreclosure suit in the federal court of South Carolina. Furthermore the record of the hearing on the motion held on the same day, July 29, 1964, discloses that counsel for Bank did not press the issue of lifting the injunction with regard to the foreclosure pending in the Pennsylvania State Court, intimating that if satisfaction of the mortgagee's claim was not achieved in the South Carolina proceedings further application would be made with reference

to the Pennsylvania properties.[14] However, a ruling upon the Bank's motion was aborted by the filing of the appeals and, as contended by the Bank, this appeal relates to the orders of June 8 and 26, 1964 wherefrom there can be no doubt that the Bank's foreclosure action in Pennsylvania was enjoined by the order of June 8, 1964 and that the South Carolina foreclosure was enjoined by the amending order of June 26, 1964. Hence the fact remains that with the filing of the order of June 26, 1964 both foreclosure proceedings were enjoined by the District Court and, as submitted by the Bank, it is from the injunctions that this appeal has been brought.[15] As between the application of the law discussed above to the foreclosure proceedings in the Pennsylvania State Court and the action removed to the federal court in South Carolina we see no difference.

The injunctions contained in the orders of June 8, and 26, 1964 in so far as they affect the Bank's foreclosure actions were improvidently entered. To that extent they should be vacated and the Bank should be permitted to pursue its actions in both courts, as the exigencies of satisfying its claims may require.[16]

This case will be remanded to the United States District Court for the Eastern District of Pennsylvania for revision of its orders of June 8, 1964 and June 26, 1964 to conform with the holdings herein.

14. Record of Hearing of July 29, 1964, on motion of North Carolina Bank to amend order dated June 26, 1964, pages 38–39.

"MR. DeLONE: Your Honor, I wonder if I might say just one thing, not to argue this but so there would be no confusion in the record about the position of my client with reference to the mortgage on the Pennsylvania properties.

"It is true that up to this point we have not raised, and I do not press here today the point I have raised about the South Carolina foreclosure. We urge that the South Carolina foreclosure should be allowed to go forward and we are pleased if we can only have that which we initially understood we would, and to make no issue at this time about the Pennsylvania foreclosure. Now, I do not, however, want to be—in the event that we do not achieve the satisfaction of our claim, then I would have to make further application to Your Honor at

that time with reference to the Pennsylvania properties. And I simply wanted there to be no doubt about my position in that regard."

15. The Bank's notice of appeal was from the orders of June 8, 12 and 26, 1964. The order of June 12 merely brought in additional defendants. The Bank's argument is directed only to, and this appeal deals, with the orders of June 8 and 26.

16. It appears to be suggested by the Government and the Receivers that the Bank's foreclosure action is subject to restraint in the Pennsylvania State Court because only the mortgagor, Laundry, is named as defendant in that suit and the United States has not been joined as a junior lienor as in the South Carolina foreclosure. Such a position is untenable under United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960).