**Pedro A. MATTEI, Respondent, Appellant,**

v.

**V/O PRODINTORG, Libellant, Appellee.**

No. 6086.

United States Court of Appeals
First Circuit.

July 25, 1963.

Joseph T. Wynne, with whom Isaias Rodriguez Moreno and Elmer Toro Lucchetti, San Juan, P. R., were on brief, for appellant.

Harvey B. Nachman, with whom Nachman & Feldstein, San Juan, P. R., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is an appeal under Title 28 U.S.C. § 1292(a) (3) from an interlocutory decree and a supplementary interlocutory decree entered in a libel in admiralty by the United States District Court for the District of Puerto Rico.[1] In the view we take there is no need to state this case in all its complicated detail. The following statement will suffice.

One Kane and others obtained a judgment by default against an agency of the Government of Cuba, i. e., the National Institute of Agrarian Reform, in the Circuit Court for Dade County, Florida.

Subsequently, in August, 1962, the British steamship "Streatham Hill," under time charter to an agency of the Union of Soviet Socialist Republics called V/O Sovfracht, and subcharter to another agency of the same government, V/O Prodintorg, ran aground after leaving the Republic of Cuba with a cargo of sugar destined for delivery to Russian ports. She put into San Juan, Puerto Rico, in distress for needed repairs. In order to make repairs approximately 14,135 bags of sugar were removed from the ship and placed in bond in a United States Customs warehouse, for it could not be imported into the United States under Cuban import regulations promulgated by the Secretary of the Treasury of the United States.

On September 18, 1962, the Florida judgment creditors brought suit on their judgment in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, against the Republic of Cuba and/or the National Institute of Agraian Reform. And on the next day, just as the "Streatham Hill" was about to reload its cargo and depart, the Superior Court of Puerto Rico on the representation of plaintiffs' counsel that the sugar in the warehouse belonged to the Government of Cuba or its agencies, issued a writ of attachment which designated, *inter alia,* the sugar in the warehouse and appointed Pedro A. Mattei, the appellant herein, custodian of that sugar. So far as appears the attachment was in full compliance with local law.

On October 9, 1962, V/O Prodintorg filed the instant libel in admiralty in the court below against Pedro A. Mattei and the Florida judgment creditors. It is anything but a masterpiece of clarity in either its theory or its allegations, which misled the court below and confused the issue here. In its body the allegation is made that "plaintiff should be restored to possession of its property and since plaintiff does not demand immediate possession of said property but merely a hearing to determine its right thereto" it should not be required to post a bond as provided by § 814 of Title 32, Laws of Puerto Rico Annotated. But for relief Prodintorg asked the court for a deter-

---

1. Prodintorg commenced its action by filing a "Complaint" in which it alleged jurisdiction under Title 28 U.S.C. § 1331 (federal question and amount in controversy), § 1332(a) (diversity of citizenship and amount in controversy) and § 1333 (admiralty and maritime cases). We treat the action as in admiralty for it was so treated in the court below and because the interlocutory decree therein was appealed as such under § 1292(a) (3).

mination that it was the lawful owner of the attached sugar, for an order directing "the defendants and each of them and particularly Pedro A. Mattei, to restore the said property to the situs and condition in which it was found at the time levy was effected," and for damages in the amount of $1,000,000 plus costs and a reasonable attorney's fee.

On the next day, October 10, before the libel had been served on any of the respondents named therein, V/O Prodintorg filed a "Motion For A Hearing To Determine Possession." This motion makes explicit what was implicit in the libel, that is to say, that V/O Prodintorg was not seeking merely an adjudication that it had title to the sugar but was seeking immediate possession as well, for, after reciting that the "Streatham Hill" was being detained by the attachment of a portion of its cargo, V/O Prodintorg " * * * requested that a hearing * * * be held forthwith and that the respondents (defendants) be ordered to show cause why the property now in the possession and custody of the respondent (defendant) Pedro A. Mattei should not be restored to the libellant (plaintiff), and for such other and further relief that * * * may seem just and proper in the premises." On the same day, October 10, the court issued an order to show cause returnable at 2 P.M. on the next day, October 11, and ordered that "personal service of a copy of this order prior to 10:00 o'clock in the afternoon of Wednesday, October 10, 1962, shall be sufficient notice."

Counsel representing Mattei appeared in response to the order to show cause and asked for time to prepare an argument on the motion for a hearing to determine possession. His request was denied except insofar as the court set the following Monday, October 15, for the taking of evidence on the merits of the motion, and colloquy followed between the court and counsel with respect to jurisdiction and the propriety of exercising jurisdiction under the rules of comity.

During the course of this discussion the court characterized the libel as "a sort of declaratory-possessory action," and "in a certain sense * * * an action in the nature of a Replevin in Admiralty; but * * * a Replevin without the request to take possession," and concluded that it had jurisdiction. Then addressing itself to the question of comity the court indicated that it regarded the libel as an action *in personam* to which the principle of comity did not apply under the rule as enunciated in Kline v. Burke Construction Co., 260 U. S. 226, at page 230, 43 S.Ct. 79, at page 81, 67 L.Ed. 226 (1922), in which the Court used the oft-quoted language: " * * * a controversy is not a thing, and a controversy over a mere question of personal liability does not involve the possession or control of a thing, and an action brought to enforce such a liability does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." The court below said that it had "to grant that the sugar is now—that is the res, is under the custody and in the possession of the local court." But the court felt that there was no conflict with the local court because only "a question of title" was before it. Clarifying its position the court said:

"This is a sort of declaratory action that this Court declare * * * that this sugar belongs to the plaintiff in this action, and that the defendant is not the owner, or has any interest or title in that sugar—period. That would be the judgment that this Court may render in this action."

\* \* \* \* \* \*

"Of course, then they may use that judgment in the local court and go in and ask that the sugar be delivered to them, and you can not contest in the local court the judgment rendered here, because it is res adjudicata."

On Monday, October 15, with only the custodian, Pedro Mattei, appearing as a

respondent (the other respondents have never been served), the court heard evidence on the issue of the ownership of the 14,000 odd bags of sugar. And on the following day it filed findings of fact and conclusions of law as required by Admiralty Rule 46½.

It found that there was not "a scintilla of evidence that title to the cargo aboard the SS Streatham Hill belongs to the Cuban Government or its agencies or to any one other than the libellant herein" and further: "Irreparable damage is being caused by the detention of its goods by an order of attachment that was issued without a shred of evidence to support the fact that the property seized belonged to anyone other than the libellant herein." Wherefore the court concluded as a matter of law that the "libellant has the right to the enjoyment and full possession of its property."

In its interlocutory decree based upon its findings and conclusions the court decreed that the sugar was the property of V/O Prodintorg and "no other person or entity," that it was "entitled to the immediate possession and enjoyment" of its property, and that the respondent Mattei had no right, title or interest in the sugar. In addition the court restrained Mattei in broad terms from interfering in any way whatsoever with V/O Prodintorg's "right to perform any and all acts of ownership with respect to its said property, including the use, enjoyment and disposal thereof," and set the question of the plaintiff's damages for future hearing.[2] Later on the same day the court entered a supplementary interlocutory decree stating that the provisions of its preceding decree should be "immediately executory," and the respondent Mattei appealed from both decrees.

We do not stop to consider whether the action, or libel, properly lies in admiralty. Nor do we pause to consider the propriety of the procedure adopted by the court below. For we think the court below acted under the misapprehension that all that V/O Prodintorg sought by its libel was an adjudication of title to the sugar whereas the obvious effect of the relief requested and certainly of the relief afforded, contrary to the argument of V/O Prodintorg's proctor, or counsel, is to wrest possession of the sugar from the clear, and indeed admitted, custody of the local court. Wherefore we think V/O Prodintorg's libel, or action, was instituted and carried on to trial and interlocutory decree in the court below in violation of a basic principle of long standing.

In Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470 (1836), it was expressly held that property taken by a sheriff under an execution from a state court could not be taken in execution by a marshal of the United States by virtue of final process upon a judgment of a federal court. Later cases affirm and elaborate upon the rule. In Covell v. Heyman, 111 U.S. 176, at page 182, 4 S.Ct. 355, at page 358, 28 L.Ed. 390 (1884), the Court said: "That which cannot be done by final process, is equally out of the reach of original or mesne process" and, distinguishing Buck v. Colbath, 3 Wall. 334, 18 L.Ed. 257 (1865), as an action of trespass against a United States marshal not involving any interference with property in his possession, reaffirmed the principle of comity considered at length in the leading case of Freeman v. Howe, 24 How. 450, 16 L.Ed. 749 (1860), in which the Court held on the authority of Taylor v. Carryl, 20 How. 583, 15 L.Ed. 1028 (1857), that even though a writ of attachment had been wrongfully levied upon the property of a party not named in the writ, nevertheless the rightful owner could not obtain possession of his property by resort to the courts of another jurisdiction. In Covell the Court said that the principle was correctly stated by Mr. Justice Miller in Buck v. Colbath to be one "essential to the dignity and just authority of every court, and to the comity which should regulate the rela-

---

2. Counsel for V/O Prodintorg concedes in his brief that the respondent-appellant, Mattei, "as custodian would not be liable for any damages."

tions between all courts of concurrent jurisdiction," and that the principle was "that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises." [3]

Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), upon which the court below relied, is not in point, for the two actions there involved were strictly *in personam*, and, like Buck v. Colbath, supra, no question of interference by one court with property in the custody of another was involved. Indeed, in Kline the court reaffirmed the principle of the earlier cases discussed herein above, referring with approval to Covell v. Heyman, supra, from which it quoted (260 U.S. at pages 229–230, 43 S.Ct. at page 81) as follows:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between State Courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void."

V/O Prodintorg's libel as clarified in its motion for a hearing to determine possession, seen in its true light, is one to wrest possession of the sugar from the custody of the Superior Court of Puerto Rico. Therefore we think that the court below should have applied the principle of comity established by the early cases cited and discussed above, which so far as we know have been adhered to ever since. See Fischer v. American United Life Ins. Co., 314 U.S. 549, 554, 62 S.Ct. 380, 383, 86 L.Ed. 444 (1942), in which the Court said that although a state court may properly adjudicate rights in property in the possession of a federal court and that the same procedure may be followed by a federal court with respect to property in the possession of a state court, nevertheless a "federal court may not 'seize and control the property which is in the possession of the state court' nor interfere with the state court or its functions. Waterman v. Canal-Louisiana Bank & Trust Co., [215 U.S. 33, 44, 45, 30 S.Ct. 10, 54 L.Ed. 80]; Princess Lida v. Thompson, 305 U.S. 456 [59 S.Ct. 270, 83 L.Ed. 285]." See, too, United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); Penn General Casualty Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935), and Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871 (1923).

Judgment will be entered vacating the interlocutory decrees of the District Court and remanding the case to that Court with directions to dismiss the libel.

---

3. Although Puerto Rico is not a state of the United States, we have no doubt that the principle of comity applies as between its courts and the courts of the United States.